RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0084p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

FIREXO, INC.,

>    *Plaintiff-Appellant*,

>    No. 23-3085

   *v.*

FIREXO GROUP LIMITED,

>    *Defendant-Appellee*.

───────────────

Appeal from the United States District Court for the Northern District of Ohio at Toledo.
No. 3:21-cv-02336—Jack Zouhary, District Judge.

Argued:  October 18, 2023

Decided and Filed:  April 12, 2024

Before:  BATCHELDER, GRIFFIN, and LARSEN, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:**  Paul Belazis, MALONE, AULT & FARELL, Toledo, Ohio, for Appellant.  Jason J. Blake, CALFEE, HALTER & GRISWOLD, LLP, Columbus, Ohio, for Appellee.  **ON BRIEF:** Paul Belazis, MALONE, AULT & FARELL, Toledo, Ohio, for Appellant.  Jason J. Blake, John F. Fisher, CALFEE, HALTER & GRISWOLD, LLP, Columbus, Ohio, for Appellee.

BATCHELDER, J., announced the judgment, in which LARSEN, J., joined, and delivered the lead opinion in which LARSEN, J., joined in part.  LARSEN, J. (pp. 35–37), delivered a separate opinion concurring in part and in the judgment.  GRIFFIN, J. (pp. 38–45), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

ALICE M. BATCHELDER, Circuit Judge. A corporate defendant in a civil lawsuit moved to dismiss the plaintiff's action based on a contractual forum-selection clause even though the plaintiff was not a signatory to that contract. The district court applied the so-called "closely related" doctrine, found that the plaintiff was sufficiently closely related to the contract for the court to apply and enforce the forum-selection clause against that non-signatory plaintiff, and dismissed the action. The plaintiff appeals, arguing that the district court applied the wrong law, and correspondingly the wrong analytical approach, to determine the contract's applicability. Ultimately, we agree and for the reasons that follow, we REVERSE and REMAND.

## I. FACTS

Firexo Group Limited ("FGL") is a British company that makes fire extinguishers. In 2019, FGL partnered with Scot Smith (of Port Clinton, Ohio) to sell its fire extinguishers in the United States. FGL and Smith entered a contract titled "Shareholder Agreement" (though it is referred to therein, by the district court, and hereinafter as the "Joint Venture Agreement" or "JVA"), through which Smith purchased from FGL 70% of its wholly owned subsidiary, Firexo Corporation, already incorporated in Florida. Firexo was not a signatory to the JVA.

The JVA has a forum-selection clause designating England or Wales as the "exclusive jurisdiction to settle any dispute or claim that arises out of or in connection with this agreement or its subject matter or formation." This language appears very broad: i.e., "*any dispute . . . in connection with*." For perspective, consider "two categories of terms describing the scope of a forum selection clause. The narrower category includes terms such as 'arise out of,' 'arise from,' or 'arising under,' whereas the broader category includes terms such as 'in connection with,' 'relating to,' or 'associated with.'" *Prod. Res. Grp., L.L.C. v. Martin Pro., A/S*, 907 F. Supp. 2d 401, 412 (S.D.N.Y. 2012) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007)).

In 2021, based on its ongoing and worsening problems with FGL's fire extinguishers, Firexo sued FGL in an Ohio court. In its complaint, Firexo claimed breach of contract based on an oral "sole distributorship agreement," breach of the duty of good faith, breach of the warranties of fitness and merchantability, misrepresentation, and fraud in the inducement. The complaint did not name Smith as a plaintiff, nor did it reference the JVA or the Uniform Commercial Code. FGL removed the case to federal court based on diversity and then, relying on the JVA's forum selection of England or Wales, moved to dismiss. The district court granted the motion. *Firexo, Inc. v. Firexo Grp. Ltd.*, No. 3:21-cv-2336, 2023 WL 2772388 (N.D. Ohio Jan. 26, 2023).

The determinative question was, and is, whether plaintiff Firexo, which is essentially the product of FGL's and Smith's joint venture, is bound by the terms of the JVA even though it is not a party (signatory) to the JVA. Certain provisions of the JVA are relevant to this dispute:

*Overview:*

A.   [FGL] and [Smith] have agreed to form and jointly own a new company, the Joint Venture Company (the 'JVC' [i.e., Firexo]);

B.   [Firexo] will carry on business in accordance with the terms and conditions of this agreement; and,

C.   [FGL] and [Smith] will exercise their rights in relation to [Firexo] in accordance with the terms and conditions of this Agreement

*Purpose:*

2.1   The Business of [Firexo] is the sale and distribution of [FGL]'s fire extinguishing products within the [United States].

*Investment:*

6.1   [Smith] shall invest one million seven hundred thousand British pounds sterling (£1,700,000.00) in consideration for seventy (70) shares [i.e., 70% ownership] of [Firexo].

*Parties' Relationship per the JVA:*

26.1   All transactions entered into between either party and [Firexo] shall be conducted in good faith and on the basis set out or referred to in this agreement or, if not provided for in this agreement, as may be agreed by the parties and, in the absence of such agreement, on an arm's length basis.

*Third-Party Rights:*

30.1    This agreement is made for the benefit of the parties and their successors and permitted assigns and is not intended to benefit, or be enforceable by, anyone else.

*Choice of Law:*

33.1    This agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation shall be governed by and construed in accordance with the laws of England and Wales.

*Forum-Selection Clause:*

33.2    Each party irrevocably agrees that the courts of England and Wales shall have exclusive jurisdiction to settle any dispute or claim that arises out of or in connection with this agreement or its subject matter or formation.

Three things about this contract bear recognition or brief discussion. One, the crux of the JVA is that FGL sold 70% of Firexo to Smith for £1,700,000, *ergo* offer, acceptance, and consideration. But if Firexo received some benefit from the JVA, other than Smith's new partial ownership, that benefit is not evident. That is, if Firexo had been a signatory party to the JVA and agreed to be bound by its provisions, it is not evident what consideration Firexo would have received for doing so. Two, because FGL owned Firexo and sold 70% of it to Smith, if Firexo had been a signatory party to the JVA, it is not clear here whether Firexo would have contracted with FGL or with Smith. And three, while the JVA sets out Smith's and FGL's mutual agreement to engage in a certain business, namely the sale and distribution of FGL's fire extinguishers in the United States, the JVA does not specify any terms, such as price, quantity, quality, or duration. According to Firexo, the subsequent oral "sole distribution agreement" established those terms.

The district court determined that even though Firexo was not a signatory to the JVA, the JVA's forum-selection clause applied because Firexo and its claims were so "closely related" to the JVA that it was "foreseeable" that the clause would apply. *Firexo*, 2023 WL 2772388, at *1. That is, even though the JVA contained no terms governing Firexo's and FGL's business relationship, it was necessarily foreseeable to Firexo that any lawsuit arising out of or related to its business with FGL (i.e., the distribution of FGL's fire extinguishers) had to be filed in a court

in England or Wales, and decided pursuant to English law.  To support this determination, the district court adopted the Fifth Circuit's somewhat novel four-factor test for "closely related":

(1) common ownership between the signatory and the non-signatory,

(2) direct benefits obtained from the contract at issue,

(3) knowledge of the agreement generally, and

(4) awareness of the forum selection clause particularly.

*Id.* at \*2 (quoting *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 442 (5th Cir. 2022)).  The district court then found those factors were satisfied based on several articulated facts, including:

- The JVA specified [that] the purpose of Firexo would be the 'sale and distribution of FGL's fire extinguishing products within the United States.'
- Smith agreed in the JVA to carry out Firexo's business in accordance with the terms of the JVA.
- Smith agreed to exercise his rights relating to Firexo consistent with the terms of the JVA.
- Smith and FGL are the original and only investors in Firexo.[1]
- Smith is the majority shareholder and Executive Officer of Firexo and is directing this lawsuit.

*Id.* (editorial marks omitted).  The district court held that "[b]ecause Firexo is so 'closely related' to the dispute between Smith and FGL, it was 'foreseeable' that it w[ould] be bound by the JVA's forum-selection clause," *id.* at \*3, and dismissed the case for lack of jurisdiction.

## II.  BACKGROUND LAW

### A.  Forum Selection Clauses—Existence, Enforceability, Applicability, and Effect

*Existence*.  The parties to a contract may agree to litigate any or all potential future disputes in a particular forum via a "forum-selection clause."  *See Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972) ("Forum-selection clauses . . . are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.").  This is often a bargained-

---

[1]To be clear, FGL incorporated Firexo and sold (via the JVA) 70% to Smith.  So FGL is the only original incorporator and investor.  As a purchaser that paid its money to FGL, Smith was not a Firexo "investor."

for provision.**²** *Id.* at 16 ("It is equally possible that the contract price took this [forum-selection clause] into account.").

*Enforceability*. In the Sixth Circuit, "[f]ederal law governs the enforceability of a forum-selection clause in a diversity suit." *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 568 (6th Cir. 2019) (citing *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009)). "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Wong*, 589 F.3d at 828 (citation omitted). To determine whether a forum-selection clause is enforceable, the district court considers:

(1) whether the clause was obtained by fraud, duress, or other unconscionable means;

(2) whether the designated forum would ineffectively or unfairly handle the suit; and

(3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust.

*Wong*, 589 F.3d at 828 (paragraph breaks inserted; citation omitted); *see also Cadle Co. v. Reiner, Reiner & Bendett, P.C.*, 307 F. App'x 884, 886 (6th Cir. 2009) ("[A] forum selection clause originating from an arms-length commercial transaction is valid and enforceable absent fraud, overreaching, or circumstances under which enforcement would be unreasonable or unjust."). Sometimes, the first enforceability factor is alternatively considered as a separate question of *validity*. And note the overlap between this test for forum-selection-clause enforceability (factors two and three) and *forum non conveniens*, as is discussed further in Section II.B, *infra*.

"The enforceability of a forum-selection clause [] is a question of law that we review *de novo*." *Boling*, 771 F. App'x at 568-69 (citing *Wong*, 589 F.3d at 826, and *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006)), albeit with the presumption that "[c]ourts should uphold a forum-selection clause unless there is a strong showing that the clause should be set aside," *id.* at 567-68 (citing *Wong*, 589 F.3d at 828).

---

**²**A modified analysis applies when it is not bargained. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991).

*Applicability.* Whether and how a contract provision applies to the parties or claims in a lawsuit is generally a matter of contract interpretation, but gauging the applicability (or scope) of forum-selection clauses is an open question in the Sixth Circuit. *See Wieland Copper Prod., LLC v. Actian Corp.*, No. 3:21-cv-755, 2022 WL 18638816, at *3 (W.D. Ky. May 4, 2022) (lamenting that "the Sixth Circuit has not expressly adopted an analytical approach [for] determining the applicability of a forum-selection clause" and asserting that it had "not located a case from the Sixth Circuit that offers definitive guidance on the applicability question").

As an ordinary matter of contract interpretation, a federal court sitting in diversity begins with a conflict-of-laws analysis using the law of the State in which it sits to determine the governing law, and then interprets the contract provision under that law. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. --, 142 S. Ct. 1502, 1509 (2022). That is, the court first determines the controlling law and then assesses the forum-selection clause under that law to determine whether and how it applies to the parties and claims in the pending lawsuit. But the present case is far from the ordinary scenario, and all of this will be addressed fully herein.

*Effect.* A forum-selection clause designating jurisdiction in another forum does not deprive a federal district court of jurisdiction. *Bremen*, 407 U.S. at 12; *accord Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 948 (6th Cir. 2002). It can, however, establish personal jurisdiction in the selected forum. *Preferred Cap.*, 453 F.3d at 721 ("The use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court."). Nor does a forum-selection clause deprive a federal district court of venue. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 57 (2013) (explaining that "venue is proper so long as the requirements of [28 U.S.C.] § 1391(b) are met, irrespective of any forum-selection clause"). Instead, the forum-selection clause alters the venue analysis.

When the forum-selection clause designates a court "within the federal court system," the appropriate mechanism is "a motion to transfer," pursuant to § 1404(a). *Boling*, 771 F. App'x at 567 (citing *Atl. Marine*, 571 U.S. at 59); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("Section 1404(a) is intended to place discretion in the district court to adjudicate motions

for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" (citation omitted)). But when the "forum-selection clause indicates that a matter should be heard by a state or foreign court, then *forum non conveniens* is the appropriate method of enforcement." *Boling*, 771 F. App'x at 567 (citing *Atl. Marine*, 571 U.S. at 60-61). And, under that modified *forum-non-conveniens* analysis, "[a] valid forum-selection clause will have 'controlling weight in all but the most exceptional cases.'" *Id.* at 568 (quoting *Atl. Marine*, 571 U.S. at 63).

## B. *Forum-Non-Conveniens* Analysis

"*Forum non conveniens* permits a court to decline to exercise jurisdiction even when jurisdiction is proper." *Boling*, 771 F. App'x at 567 (citing *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016)). Ordinarily, in deciding a defendant's *forum-non-conveniens* motion, the district court considers three factors: the degree of deference owed to the plaintiff's choice of forum, whether the defendant has shown that an adequate alternative forum is available, and whether the defendant has shown that the private and public interests dictate that the plaintiff's chosen forum would be unnecessarily burdensome. *See Jones v. IPX Int'l Equatorial Guinea, S.A.*, 920 F.3d 1085, 1090 (6th Cir. 2019); *Hefferan*, 828 F.3d at 492.

But an enforceable forum-selection clause alters the standard *forum-non-conveniens* analysis in two critical ways: (1) it flips the burden from the defendant to the plaintiff ("[T]he plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."); and (2) it eliminates any private-interest factors from consideration ("A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum."). *Atl. Marine*, 571 U.S. at 63 (citations omitted). The "practical result" is that, because "[p]ublic-interest factors . . . will rarely defeat a transfer motion, . . . forum-selection clauses will almost always control." *Boling*, 771 F. App'x at 568.

In the Sixth Circuit, the analytical approach to a *forum-non-conveniens* motion based on a contractual forum-selection clause has two steps, with the first step being to "determine whether [the] forum-selection clause is [1] applicable to the claims at issue, [2] mandatory, [3] valid, and

[4] enforceable;" and the second step being to "balance[e] the *forum-non-conveniens* factors." *Lakeside Surfaces, Inc. v. Cambria Co.*, *LLC*, 16 F.4th 209, 215 (6th Cir. 2021) (numbering added).

> [W]hen assessing a *forum-non-conveniens* motion relying on a forum-selection clause, we first ask several contract-specific questions, including whether the forum-selection clause is [1] applicable, [2] mandatory, [3] valid, and [4] enforceable. An answer of 'yes' to all those questions means *Atlantic Marine*'s modified *forum-non-conveniens* analysis applies and the plaintiff bears the burden of showing that the public factors weigh heavily against dismissal; an answer of 'no' to any of them means the traditional *forum-non-conveniens* analysis applies instead. We review the district court's assessment of [those four first-step] questions de novo and review its [second-step] balancing of the *forum-non-conveniens* factors for abuse of discretion.

*Id*. at 216 (citation omitted; numbering added). In this case, the district court determined that the forum-selection clause was enforceable, whereas Firexo argues that it should have found it was not applicable. There is no dispute that the JVA's forum-selection clause is mandatory and valid.

"We [] review a district court's *forum non conveniens* determination for abuse of discretion." *Boling*, 771 F. App'x at 568. Before we will overturn a district court's *forum-non-conveniens* decision, we must have "a definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).

## C. The "Closely Related" Doctrine—Origin, Evolution, and Current Condition

It is axiomatic that, "[t]ypically, only parties to a contract are bound to its terms." *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 277 (6th Cir. 2021); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."); *WashPro Express, LLC v. VERwater Envtl., LLC*, 2007 WL 641425, 2007-Ohio-910, at ¶ 9 (Ohio Ct. App., Mar. 5, 2007) ("[U]nder the basic principles of contract law, a contractual agreement is unenforceable against a person or entity who was not a party to the contract."). But there are certainly exceptions, such as in agency, for third-party beneficiaries, or via equitable estoppel. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("[T]raditional principles of state law allow a contract to be enforced by or against nonparties to

the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." (quotation marks and citation omitted)).

The exception involved here is most frequently referred to as the "closely related" doctrine, which "permit[s] non-signatories to an agreement to be bound by, and to enforce, forum selection clauses where, under the circumstances, the non-signatories enjoyed a sufficiently close nexus to the dispute or to another signatory such that it was foreseeable that they would be bound." *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 439 (5th Cir. 2022) (citations omitted). This is a federal-common-law doctrine concerning the applicability of contracts, specifically a contract's forum-selection clause. And "[a]lthough most circuits have adopted the closely-related doctrine, they have usually done so without in-depth explanation of the theory." *Id.* (citations omitted).

Before getting too far, it bears recognizing and acknowledging at the outset that while this doctrine applies only to forum-selection clauses, it makes those clauses enforceable by and against non-signatories, i.e., entities who did not sign the contract, likely did not negotiate the contract, and possibly did not even know about the contract, much less read it. Obviously, this raises certain fundamental concerns. For one, under the objective theory of contracts, the parties to a contract must manifest a mutual assent to be bound, supported by consideration. "However, when applied to enforcement against a non-signatory [], the closely-related[] doctrine renders the requirement of consideration null." Lukas A. Anton, *C.H. Robinson Worldwide, Inc. v. Fls Transportation, Inc.: How Minnesota's Closely-Related-Party Doctrine Undermines Long-Settled Principles of Contract Law*, 35 Hamline L. Rev. 497, 536 (2012). Similarly, "a contract . . . binding [a] non-signatory [entity] violates that [entity]'s right to refrain from entering into contracts." *Id.* at 534 ("Just as every American citizen enjoys a liberty interest to enter into and enforce contracts, an implied converse liberty interest exists to refrain from doing so."). Going a step further, a plaintiff's use of the "closely related" doctrine to establish personal jurisdiction over a non-signatory defendant in the designated forum implicates a constitutional due process problem by circumventing the minimum-contacts requirement. *See*, *e.g.*, *Truinject Corp. v. Nestle Skin Health, S.A.*, No.19-592 2019 WL 6828984, at *11 (D. Del. Dec. 13, 2019) ("As an

initial matter, I have serious questions about the constitutionality of using the 'closely related' test to exercise personal jurisdiction over a non-signatory to a contract with a forum selection clause."). And, as a federal-common-law doctrine of contract interpretation, the "closely related" doctrine would appear to violate ordinary *Erie*-doctrine principles. *See* Section II.D, *infra*. But the initial question concerns the origin and, specifically, the source of authority to justify this doctrine.

As conventionally understood, the "closely related" doctrine's first appearance in federal law comes in a footnote to a 1988 case, *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988). The contract between Manetti-Farrow and Gucci Parfums had a forum-selection clause designating Florence, Italy, so when Manetti-Farrow sued Gucci Parfums and its sister company, Gucci America, in California federal court, raising tort claims, the Gucci defendants moved to dismiss the case based on the forum-selection clause. *Id.* at 511. The focus and bulk of the *Manetti-Farrow* opinion concerned the related questions of whether the contract's forum-selection clause covered the tort claims and how to decide that question, but in a stand-alone footnote, the court offhandedly addressed the fact that Gucci America was not a signatory to the contract:

> Manetti-Farrow argues [that] the forum selection clause can only apply to Gucci Parfums, which was the only defendant to sign the contract. However, 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.' *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202-03 (3d Cir. 1983)). We agree with the district court that the alleged conduct of the non-parties is *so closely related* to the contractual relationship that the forum selection clause applies to all defendants.

*Id*. at 514 n.5 (partial citation omitted; emphasis added). Neither of the two cases cited in that passage—the first a trust-law case and the other a bankruptcy case—created the "closely related" doctrine as we know it; both involved non-signatories who were third-party beneficiaries.

It was another five years before the "closely related" doctrine first appeared as we know it, in *Hugel v. Corp. of Lloyd's*, 999 F.2d 206 (7th Cir. 1993). Hugel and Lloyd's were parties to a partnership contract with both forum-selection and choice-of-law clauses (England). When Lloyd's improperly disclosed harmful information about Hugel's two privately owned

businesses, GCM and OMI, Hugel sued and Lloyd's moved to dismiss based on the partnership contract's forum-selection clause. All three entities—Hugel, GCM, and OMI—were named plaintiffs in the lawsuit, but only Hugel had signed the contract with the forum-selection clause. Thus, GCM and OMI argued that they were not bound by the clause because they had not signed the contract. In disagreeing, the Seventh Circuit created the "closely related" doctrine as we know it:

> In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988); *Coastal Steel*, 709 F.2d at 203. Hugel is President and Chairman of the Board of both GCM and OMI. In addition, Hugel owns 99% of the stock of GCM which, in turn, owns 100% of the stock of OMI. . . .

> Hugel and Lloyd's contracted to settle all of their disputes in England. Although GCM and OMI were not members of Lloyd's, in the course of a dispute between Hugel and Lloyd's, Hugel alone involved his two controlled corporations and supplied information allegedly belonging to those corporations. The . . . corporations owned and controlled by Hugel are *so closely related* to the dispute that they are equally bound by the forum selection clause and must sue in the same court in which Hugel agreed to sue.

*Id*. at 209-10 (footnote omitted; emphasis added). These two paragraphs comprise the entirety of the analysis of this issue—just this unexplained, unjustified, and unadorned proclamation that "to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound," with citation to the *ipse dixit* footnote in *Manetti-Farrow* and the third-party-beneficiary doctrine in *Coastal Steel*, as discussed above.

Also, in a footnote to the above passage, *Hugel* provides an additional *ipse dixit* proclamation that would appear to distinguish and negate any reliance on *Coastal Steel*:

> Plaintiffs argue that the court must make a threshold finding that a non-party to a contract is a third-party beneficiary before binding him to a forum selection clause. While it may be true that third-party beneficiaries of a contract would, by definition, satisfy the 'closely related' and 'foreseeability' requirements, *see e.g.*, *Coastal Steel*, 709 F.2d at 203 (refusing to absolve a third-party beneficiary from the strictures of a forum selection clause which was foreseeable); *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984), *a third-party beneficiary status is not required.*

*Id*. at 209 n.7 (emphasis added). That is, after acknowledging that *Coastal Steel* and *Clinton* were based on the third-party-beneficiary doctrine, *Hugel* says third-party-beneficiary status is not necessary, but offers no justification, explanation, or even legal citation for that statement.

Four years later, the "closely related" doctrine appeared in the Sixth Circuit, in *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997). Baker and Lloyd's had a partnership contract with a forum-selection clause (England). LeBoeuf was Lloyd's American law firm, but was not a party to the contract between Baker and Lloyd's. After LeBoeuf provided legal services to Baker, at the direction of Lloyd's, Baker sued LeBoeuf in federal court based on diversity, alleging breach of fiduciary duties, negligent representation, and legal malpractice. When non-signatory LeBoeuf sought to avail itself of (enforce) the Baker-Lloyd's partnership contract's forum-selection clause, a magistrate judge (affirmed by the district court) considered six possible doctrines, including the "closely related" doctrine, and rejected LeBoeuf's argument under each.[3] On appeal, the panel recited and summarized the district court's (and magistrate judge's) analysis of the issue under each of the six possible doctrines—leading one court to quip that "[t]his opinion has something for everyone," *Bugna v. Fike*, 80 Cal. App. 4th 229, 234 (Cal. App. 2000)—and affirmed them *in toto*. Thus, *Baker*'s entire discussion on the "closely related" doctrine comprises one, possibly two, sentences, the first being: "Relying on *Hugel*, which held that to bind a non-party to a forum selection clause, the party must be [so] 'closely related' to the dispute [] that it becomes 'foreseeable' that it will be

---

[3]The magistrate judge's Report and Recommendation, *Baker v. LeBoeuf, Lamb, Leiby & MacRae*, No. 1:92-cv-718, 1993 WL 662352 (S.D. Ohio Oct. 7, 1993), raised and analyzed six doctrines: (1) intended third party beneficiary, *id.* at *6, 8; (2) *forum non conveniens*, based on citizenship and "international interests," *id*. *7, 11, 12; (3) agency, considering whether LeBoeuf was a Lloyd's "entity" or "agent," *id*. at *8, 11; (4) estoppel, considering whether Baker had shown an "intent to be bound" through a "web of standard agreements," *id.* at *9, 11; (5) joinder, considering whether Lloyd's was an "indispensable party" and the claims against LeBoeuf so "integrally related," *id*. at *10-11; and (6) the "closely related" doctrine, based on *Hugel*, *id*. at *9-10. Following a two-paragraph case summary of *Hugel*, the Report's single-paragraph analysis of the "closely related" doctrine says:

> *Hugel* is a narrow holding, essentially finding that GCM and OMI were *alter egos* of [Hugel]. In the instant action, defendants are neither the *alter egos* of Lloyd's nor have they made such a claim. As the Seventh Circuit saw it [in *Hugel*], the issue was whether or not the two corporations were so closely related to the dispute between [Hugel] and Lloyd's that it was foreseeable that they too would be bound by the forum selection clause. In the instant action, there is no dispute alleged between plaintiffs and Lloyd's that is the subject matter of the claim against [LeBoeuf].

*Id*. at *10 (emphasis added). Thus, the magistrate judge construed *Hugel* as an "alter ego" theory. More to the point, the magistrate judge gave the "closely related" doctrine little more attention than did the *Baker* panel.

bound, the [district] court found no such connection in this action." *Baker*, 105 F.3d at 1106 (citations and quotation marks omitted). And in a later reference to *Hugel*'s footnote 7, *see supra*, the opinion further reported the district court's conclusion "that the 'web of agreements' between [Baker] and Lloyd's demonstrates no close connection between LeBoeuf and Lloyd's sufficient to require enforcing the forum selection clause in this action." *Id.* *Baker* offers no justification for, assessment of, or even any opinion about the "closely related" doctrine—it just recites the district court's findings and conclusions.

Thus, as in the Ninth (*Manetti-Farrow*) and Seventh (*Hugel*) Circuits, the "closely related" doctrine appeared in the Sixth Circuit without explanation, justification, or authority other than citation to *Hugel*. Unlike in the Ninth and Seventh Circuits, however, in the Sixth Circuit (*Baker*) this was not just the first appearance of the "closely related" doctrine; it was also the last and only appearance of it in the 26 years since.[4] And any putative adoption of the "closely related" doctrine was dicta[5]—*Baker*'s simple and unremarkable holding was that the non-signatory could not enforce the contract's forum-selection clause. *See Ford Motor Co. v. Kawasaki Kisen Kaisha Ltd.*, No. 2:21-cv-10119, 2023 WL 5049251, at *8 (E.D. Mich. Aug. 8, 2023) ("There does not appear to be a definitive ruling in the Sixth Circuit as to when a party to a contract can seek to bind a non-party to a forum selection clause's jurisdictional mandate. *Baker* [] involved a non-signatory defendant seeking to invoke a forum selection clause against

---

[4]Only two Sixth Circuit cases since *Baker* even brush up against the "closely related" doctrine and neither appears even to recognize it, much less formally adopt it, specifically apply it, or add anything to it.

In *Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 329 (6th Cir. 2019), certain defendants in a civil RICO action sought to avoid a forum-selection clause because they were not signatories to the contract at issue, and the panel cited *Manetti-Farrow*, 858 F.2d at 514 n.5, when discussing the topic of closely related parties. But *Wilson* did not apply, or even identify the "closely related" doctrine; it relied on the fact that, at least as alleged in the complaint, the non-signatories were conspirators with the signatories, and used that conspirator status to apply agency law, *id.* at 329 n.7, and equitable estoppel, *id.* at 329.

Similarly, in *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 280 (6th Cir. 2021), the defendant in a maritime-law action sought to avoid a forum-selection clause because it was not a signatory to the bill of lading at issue, and the panel cited *Baker*, 105 F.3d at 1106, as a "*see also*" in its agency-law analysis. *Ingram Barge* did not apply, or even identify the "closely related" doctrine; it first considered and determined that Zen-Noh was not a third-party beneficiary and then that Zen-Noh did not have an agency relationship with a signatory, to conclude that Zen-Noh was not a party to the bill of lading.

It also bears mention that both *Wilson* (RICO) and *Ingram Barge* (maritime) were federal-question-jurisdiction cases, where federal common law is necessarily commonplace. They were not diversity cases.

[5]*See* Section III.C, *infra*.

signatory plaintiffs."); *Amwear USA, Inc. v. Galls, LLC*, No. 5:20-cv-354, 2021 WL 1994228, at *5 (E.D. Ky. May 18, 2021) ("There is no definitive rule in the Sixth Circuit on when a party to a contract can seek to bind a non-party to a forum-selection clause." (footnote and citation omitted)); *ThorWorks Indus. v. E.I. DuPont De Nemours & Co.*, 606 F. Supp. 2d 691, 697 (N.D. Ohio 2008) ("The Sixth Circuit has never explicitly held that non-parties who are not third party beneficiaries can assert rights under a contract. . . . The Sixth Circuit, in *Baker* [] acknowledged and distinguished [the *Hugel*] holding.").

Over 15 years would pass before a Circuit Court would issue an opinion addressing the basis or justification for the "closely related" doctrine.[6]   In *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436 (7th Cir. 2012), Adams sued two defendants, Raintree and Starwood, in Illinois and those defendants sought dismissal based on a forum-selection clause (Mexico) in a contract between Adams and DTR, to which neither was a signatory.  Rather, Raintree was DTR's corporate parent ("more likely the great-grandparent") and Starwood was Raintree's co-conspirator or DTR's "secret principal." *Id*. at 442.  The court framed the issue that was "fundamental to the appeal" as whether "Raintree and Starwood cannot be allowed to invoke the forum selection clause because they are not parties to the contract in which it appears." *Id.* at 439.

Albeit in a roundabout way, the court considered applying a "literal approach" that would exclude any non-signatory, and rejected that approach based on equitable estoppel (i.e., it would be unfair to permit "a plaintiff [to] defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit") and public policy (i.e., ignoring "affiliates of the signatories [] could also undermine the contribution that such clauses have been praised for making to certainty in commercial transactions, particularly international transactions"). *Id.* at 440.  Thus, the court considered the "closely related" doctrine:

> A number of cases say that the test for whether a nonparty to a contract containing [a forum-selection] clause can nonetheless enforce it (and whether the nonparty will be bound by the clause if, instead of suing, it is sued) is whether the nonparty

---

[6]While this is an enlightening analysis of this non-signatory issue, it is essentially all dicta because the parties had neither raised nor argued it, thus forfeiting it, as the court expressly recognized. *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 439 (7th Cir. 2012) ("We could stop there and affirm, but will trudge on.").

is 'closely related' to the suit.  This is a vague standard, but it can be decomposed into two reasonably precise principles, which we'll call 'affiliation' and 'mutuality,' the first being applicable to Raintree and the second to Starwood.

*Id*. at 439 (citing *Hugel* and *Manetti-Farrow*, among others) (citations omitted).  That is, the *Adams* court broke the "closely related" doctrine into two doctrines: affiliation and mutuality.

As for its "affiliation doctrine," the court recognized that "there has to be a reason, rather than the mere fact of affiliation, for a nonparty to a contract to be able to invoke, or to be bound by, a clause in it," *id*. at 440, and it identified at least three concepts that were tenable under its facts: equitable estoppel, an analogy to corporate-veil piercing, and agency, *id*. at 440-42.

The application of the affiliation doctrine to Raintree is straightforward.  Raintree is the parent of DTR[] and can therefore enforce the forum selection clause in DTR's contracts with the plaintiffs since the effect is merely to substitute one [defendant] for another [defendant] that is [] bound by the forum selection clause to which the plaintiffs had agreed.  Raintree is not trying by substituting itself for DTR to change the forum agreed on in the clause. . . . The plaintiffs by signing the contracts containing the forum selection clause agreed to litigate in Mexico and Raintree is not trying to alter that agreement.

*Id*. at 442.  So, equity binds signatories to their agreement due to their consent, *id*. at 440, and Raintree "is in a sense piercing its own subsidiary's corporate veil by pretending to be a party to the subsidiary's contract," *id*. at 441.  In this scenario, non-signatory Raintree is *enforcing* the forum-selection clause against the signatory plaintiff, via equity, not being bound by it.

So much for Raintree; what of Starwood?  It is not in the ownership chain that includes [signatory DTR] . . . [But] [t]he plaintiffs are [] alleging a conspiracy between Raintree and Starwood to defraud them, and . . . the suit accuses Raintree and Starwood of being secret principals of DTR, their agent in dealing with the timeshare buyers and thus in executing the fraud.

A contract that the agent of secret principals makes with a third party can be enforced, at the third party's option of course (the third party can rescind—get out of the contract—if he prefers), against the secret principals.

*Id*. at 442-43 (citations omitted).  That is, Starwood is "affiliated" with the DTR via agency law, allowing the plaintiff to enforce the forum-selection clause against Starwood as if it were DTR (i.e., as DTR's principal).  This is where the second part—the "mutuality doctrine"—comes in:

> [F]rom this it follows that Starwood can hold the plaintiffs to the clause in the opposite situation and thus defend the suit in Mexico. Were it not for this principle of mutuality, the plaintiffs would have a choice of forums, and Starwood would not; and that could not have been the intention behind a clause that makes Mexico the exclusive forum irrespective of the parties' domiciles.

*Id*. at 443 (editorial marks, quotation marks, and citation omitted). So, because the plaintiff could enforce the forum-selection clause against Starwood (as if it were DTR), mutuality required that Starwood could reciprocally enforce the clause against the plaintiff (i.e., bind plaintiff to it).

The *Adams* scenarios did not get this far but, given that a non-signatory parent defendant (such as Raintree) could enforce a forum-selection clause against the signatory plaintiff based on pseudo corporate-veil piercing (as if it were DTR) and equitable estoppel (enforcing plaintiff's consent to Mexico), then presumably mutuality would entitle that same signatory plaintiff to enforce the forum-selection clause against that same non-signatory parent defendant (Raintree, as if it were DTR), though it is not entirely clear that mutuality would work like this. That is because *Adams* allows a defendant to use mutuality as a shield (to force the "attacking" plaintiff into the foreign forum to which it consented via contract), whereas this hypothetical uses mutuality as a sword (to force the non-signatory defendant into the foreign forum to which it never consented).

All told, either the defendant or the plaintiff could be either the non-signatory or the signatory, so there are four scenarios in which one of them invokes the forum-selection clause against another.[7] In the first two scenarios, in which a non-signatory invokes the clause against a signatory, the signatory has expressly consented to the selected forum and "[t]he non-signatory [i]s seeking to take advantage of the clause to further its own interests in litigation." *See* John F. Coyle & Robin J. Effron, *Forum Selection Clauses, Non-Signatories, and Personal Jurisdiction*, 97 Notre Dame L. Rev. 187, 209 (2021). When a non-signatory defendant, "actively seeking the benefits provided by the forum selection clause," invokes the clause against a signatory plaintiff, that defendant is acting as a presumptive alter ego or third-party beneficiary, and enforcement of

---

[7]Presumably, it is possible that *both* the plaintiff and the defendant could be non-signatories. Certainly the "closely related" doctrine, by its own terms and empirical application, would not prohibit such an odd scenario.

the clause presents no problems concerning consent or due process. *Id.* at 206. Similarly, when a non-signatory plaintiff invokes the clause against a signatory defendant, typically "as a basis for asserting personal jurisdiction over the defendant in the chosen forum," enforcement of the clause presents no problems of consent or due process: "the defendant has consented to jurisdiction in the chosen forum with respect to claims brought by *somebody*. The question is whether the defendant has consented to jurisdiction in the chosen forum with respect to claims brought by *this particular plaintiff*"—again, acting as an alter ego or third-party beneficiary. *Id.* at 208.

In the third and fourth scenarios, however, "the forum selection clause is being invoked *against* the non-signatory," *id.* at 209, as a sword rather than a shield. When a signatory defendant invokes the clause against a non-signatory plaintiff, enforcement of the clause presents a consent problem—the plaintiff *did not expressly consent* to that forum inasmuch as it never signed the contract.[8] *Id.* This correspondingly deprives the non-signatory plaintiff of its "ability to bring a lawsuit in the forum of [it]s choice," *id.*, and its "freedom *not* to contract," *id*. at 212. Finally, when a signatory plaintiff invokes the clause against a non-signatory defendant and uses it to establish personal jurisdiction in the contractually chosen forum, enforcement of the clause creates a constitutional due-process problem by circumventing the basic minimum-contacts requirement. *Id.* at 214-16. Ordinarily, a plaintiff must satisfy the Supreme Court's minimum-contacts test to establish specific personal jurisdiction over an out-of-state (foreign) defendant. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). "To conclude that a court has personal jurisdiction over a defendant based solely on that defendant's connection to a contract, [] is to fundamentally misunderstand the Supreme Court's recent caselaw in this area." Coyle, 97 Notre Dame L. Rev. at 219.

Thus, it is not clear that *Adams* provides legitimate, much less compelling, authority or justification for the "closely related" doctrine. It does, however, help solidify certain concerns.

---

[8]This is the present-case scenario, wherein signatory defendant FGL invoked the JVA's forum-selection clause against non-signatory plaintiff Firexo.

Another five years would pass after *Adams* before another Circuit Court would question the basis or application of the "closely related" doctrine. In *Wylie v. Kerzner International Bahamas Ltd.*, 706 F. App'x 577, 578 (11th Cir. 2017), Mrs. Wyley was injured at a Bahamas Resort and sued in Florida; the Resort invoked a forum-selection clause (Bahamas) in a waiver that Mr. Wylie had signed, but Mrs. Wylie had not. The district court enforced the clause against Mrs. Wylie, finding that it was foreseeable that Mr. Wylie's signature would bind her, and dismissed based on *forum non conveniens*. *Id*. at 579. On appeal, the Eleventh Circuit held that the district court had decided *enforceability* whereas the actual question was *applicability*:

> [Mrs. Wylie's] argument is that she never entered into an agreement with the defendants—her husband did—so a forum-selection clause within that agreement cannot bind her. This goes to the formation of a contract, and whether non-signatories can be bound by a related third-party's contract, not necessarily whether a forum-selection clause is enforceable.
>
> And this potentially presents a problem because, in a diversity case such as this, state-law principles generally govern the formation of contracts. Yet, in deciding whether to enforce a forum-selection clause, federal law governs even in diversity suits.
>
> It seems to us, then, that the analytical framework (and substantive law) governing the *forum non conveniens* inquiry in this diversity case depends on whether the *validity* of a forum-selection clause is distinct from, and antecedent to, its *enforceability*, or whether the validity of such a clause is just part of the federal law of enforceability, as developed in *Bremen* and expounded upon through *Atlantic Marine*. . . . [T]he Supreme Court has not answered this question. And neither have we.

*Id.* at 579-80 (editorial marks, quotation marks, and citations omitted). This passage uses the word "validity," but actually refers to "applicability" as we have used those terms herein.

The court remanded for consideration of that question. *Id.* at 580. But on remand the district court ruled that "[a] traditional *forum non conveniens* analysis mandates that this case be dismissed, regardless of whether there is a valid and enforceable forum selection clause binding Ms. Wylie." *Wylie v. Island Hotel Co. Ltd.*, No. 15-24113, 2018 WL 3421374, at *2 (S.D. Fla., July 13, 2018). In the ensuing appeal, the Eleventh Circuit affirmed on that basis and "d[id] not address whether the forum-selection clause was valid and enforceable against Ms. Wylie." *Wylie v. Island Hotel Co. Ltd.*, 774 F. App'x 574, 580 (11th Cir. 2019). Thus, the question remained

open: Is the *applicability* of a forum-selection clause distinct from and antecedent to its *enforceability*; or is its applicability just a part of the federal law of enforceability?

Meanwhile, another five years would pass before we get the last of our circuit court opinions about the "closely related" doctrine. In *Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 436 (5th Cir. 2022), a couple named Wells owned and operated a Florida company named BACE, through which they and Franlink entered into a franchise agreement with a non-compete clause and a forum-selection clause (Texas). The Wellses also owned and operated another Florida company, PayDay, and their adult son, Morton, operated a third Florida company, JTL. When Franlink discovered that PayDay, Morton, and JTL were all stealing its business, it sued them in Texas federal court, basing personal jurisdiction on the franchise agreement's forum-selection clause, even though these defendants had not signed the franchise agreement. "The district court held that, under the closely-related doctrine, the non-signatories were inextricably intertwined and closely related such that it is foreseeable they would be bound to the terms of the forum-selection clause." *Id.* at 439 (quotation marks omitted). On appeal, the Fifth Circuit acknowledged that it had "never recognized the closely-related doctrine," and that "[a]lthough most circuits have adopted the closely-related doctrine, they have usually done so without in-depth explanation of the theory." *Id.* (citations omitted). Thus, the Fifth Circuit endeavored to do so, explaining that:

> The Seventh Circuit . . . gave three reasons why allowing closely-related non-signatories to invoke a forum selection clause is an appropriate equitable theory.
>
> First, without such a principle, forum selection clauses could easily be evaded.
>
> Second, forbidding non-signatories to invoke, or to be bound, to these clauses would undermine the contribution that forum selection clauses have been praised for—providing certainty in commercial transactions.
>
> Finally, judicial efficiency counsels to recognize the theory as litigating the same case in one court is preferable to litigating the same case in two different courts.

*Id*. at 439-40 (citing *Adams*, 702 F.3d at 441) (quotation marks and citations omitted; paragraph breaks inserted). While accepting these prudential-equitable or policy reasons, *Franlink* also recognized that unless the non-signatory had "control or involvement in the contract's origin or benefits there is precious little basis for applying the closely related parties doctrine." *Id*. at 440 (quotation marks and citation omitted). And *Franlink* sought to satisfy this concern—and

somehow correspondingly justify the doctrine—by defining "closely related" based on specific limiting factors, such as: "The non-signatory's ownership of the signatory, its involvement in the negotiations, the relationship between the two parties[,] and whether the non-signatory received a direct benefit from the agreement." *Id.* at 440 (quoting *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 63 (3d Cir. 2018)) (editorial and quotation marks omitted). In the end, *Franlink* acknowledged that "the closely-related theory is not without its critics," and listed some of the concerns identified herein, *id.* at 440-41, but ultimately concluded:

> Although there is good reason to be dubious of the doctrine, the fact that it has been recognized by all other circuits to have considered it, invokes a strong reason for us to apply it in this circuit. We, as a court, are always chary to create a circuit split. Further, we must acknowledge that the doctrine can serve a purpose in producing equitable results, as earlier noted. Thus, prudence and judicial modesty caution against singularly swimming against this tide of authority.

*Id.* at 441 (editorial marks, quotation marks, and citations omitted). So, *Franlink* determined that the "closely related" doctrine was an "equitable theory" with commendable purposes and limited (or limitable) scope, but its real reason for adopting it was that everyone else had.

Thus, *Franlink* created a four-factor test for limiting or determining the scope, with the caveat that, "in line with our general understanding of equitable doctrines, we do not set out a rigid test for applying the closely-related doctrine," but rather, set out "a few fundamental factors . . . that we will consider in determining whether these non-signatories are closely related":

(1) common ownership between the signatory and the non-signatory,

(2) direct benefits obtained from the contract at issue,

(3) knowledge of the agreement generally and

(4) awareness of the forum selection clause particularly.

*Id.* at 442 (paragraph breaks inserted). By way of a footnote, *Franlink* conceded that, "given the persuasive concerns about the closely-related doctrine and that there are other avenues or forums to address [a plaintiff]'s grievances against the non-signatories, a narrow application of the doctrine is both appropriate and necessary." *Id.* at 442 n.8. Applying this four-factor test to each of its three non-signatory defendants, *Franlink* found that neither Morton nor JTL was "closely

related," but that PayDay was and, therefore, the franchise agreement's forum-selection clause established personal jurisdiction over PayDay in the selected (Texas) forum. *Id.* at 442.

At the end of the day, the "closely related" doctrine is a federal common law rule of equitable contract interpretation that is best justified by its practical benefits (or policy purposes) and the fact that everyone else is doing it. It is not entirely apparent, however, that its benefits outweigh its concerns, especially the absence of consideration under the objective theory of contracts or the absence of "minimum contacts" under the constitutional personal-jurisdiction analysis. Certainly, it is analogous to other doctrines through which contracts are enforced by or against non-signatories (e.g., alter ego, third-party beneficiary, estoppel), but while that would support an argument that the doctrine is *permissible*, it undermines an argument that the doctrine is *necessary*. *See*, *e.g.*, *M3 USA Corp. v. Qamoum*, No. 20-2903, 2021 WL 2324753, at \*12 (D.D.C. June 7, 2021) (opining that "[t]he question, then, is what the 'closely related' doctrine adds to the law"). And, even accepting the doctrine without question, as district courts and other circuits have done and continue to do, there remains a legitimate issue as to whether a forum-selection clause's *applicability* is distinct from and antecedent to its *enforceability*, such that the law of the state and/or the contract (or the combination of the two) determines whether the forum-selection clause applies to the non-signatory; or whether applicability is just a part of the federal law of enforceability, such that the federal-common-law "closely related" doctrine decides.

### D. Analogous Doctrine—Arbitration Clauses

In general, arbitration clauses are "a particular type of forum selection clause." *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1138 (6th Cir. 1991); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 534 (1995) ("foreign arbitration clauses are but a subset of foreign forum selection clauses"); *id* at 548 n.7 (Stevens, J., dissenting) ("[T]his distinction is of little importance; in relevant respects, there is no difference between the two.").

Accordingly, courts routinely apply the principles or analyses for one to the other. For example, in *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 518-19 (1974), the Court applied the *M/S Bremen* forum-selection-clause principles to arbitration clauses because "[a]n agreement to

arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause." *See also IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 640 (7th Cir. 2022) ("Considering that arbitration clauses are a species of forum selection clause, we have no problem applying [] arbitration principles to forum selection more generally." (quotation marks and citations omitted)); *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 n.7 (11th Cir. 2012) ("Although all of the cases we cite concern the application of equitable estoppel to contracts with arbitration clauses rather than forum-selection clauses, the equitable estoppel analysis is the same. Arbitration clauses are similar to forum-selection clauses."); *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) ("[W]e [have] rebuffed a similar attempt to distinguish between arbitration and forum selection/choice-of-law clauses for enforceability purposes . . . [because] there is little difference between the two."); *Manetti–Farrow*, 858 F.2d at 514 n.4 ("Although [the cited case] involved interpretation of the scope of an arbitration clause, we apply its analysis here because an agreement to arbitrate is actually a specialized forum selection clause.").

With this understanding, consider *AtriCure, Inc. v. Meng*, 12 F.4th 516, 520 (6th Cir. 2021), in which the defendants sought "to enforce a contract's arbitration clause even though they were not parties to, or third-party beneficiaries of, the contract." In rejecting this effort, we agreed that there was a time when "courts used the federal policy favoring arbitration to broadly enforce arbitration contracts in favor of (or against) nonparties under expansive readings of generic common-law concepts," *id.*, but "[t]he Supreme Court jettisoned this federal-common-law approach" in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). *Id.* at 524. "After *Arthur Andersen*, circuit courts have recognized that they now must look to the relevant state's common law to decide when nonparties may enforce (or be bound by) an arbitration agreement. To the extent that our [prior] decision[s] suggested that this issue rested on federal common law, [that] analysis did not survive *Arthur Andersen*." *AtriCure*, 12 F.4th. at 524 (citations omitted).

> Applying *Arthur Andersen* here, we must start by identifying the state law that governs. In a diversity case, the choice-of-law rules of the state in which a district court sits (here, Ohio) tell us the law to pick. It is not clear how Ohio courts would resolve this choice-of-law question. They follow the Restatement's choice-of-law rules in contract cases. And the Restatement generally respects

choice-of-law provisions in contracts. That principle would point us to Chinese law—the law that the Distribution Agreement incorporates. Yet some courts recognize that a contract's choice-of-law provision should not apply when the dispute involves nonparties who did not sign the contract. Perhaps Ohio courts would find these decisions persuasive.

*Id*. at 525 (quotation marks and citations omitted). Because none of the parties had argued for Chinese law, however, that determination was unnecessary and the *AtriCure* court simply applied Ohio law, *id.*, ultimately remanding for the district court to consider an agency theory. *Id*. at 534.

The critical point is that there is no federal common law of contract interpretation for arbitration clauses. Courts must employ a traditional *Erie*-doctrine choice-of-law analysis and interpret the applicability and enforceability of the arbitration clause under the governing law.

## III.  ANALYSIS

"We review de novo any decisions concerning choice-of-law and forum-selection clauses." *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 388 (6th Cir. 2017).

### A.  Issue—Is Applicability Separate from and Antecedent to Enforceability?

Firexo argues that there are two separate steps to analyzing a forum-selection clause: (1) applicability based on state law (and/or the law of the contract), and (2) enforceability based on federal common law.[9] Under this approach, the JVA does not pass the first step (i.e., *apply* to Firexo) because, on its own terms (JVA § 33.1), it operates under English law, and under English law, a contract applies to only the named parties (signatories) or intended beneficiaries, of which Firexo is neither; there is no place for the federal-common-law "closely related" doctrine to bring Firexo within the contract. Therefore, according to Firexo, the district court erred by skipping the first (applicability) step and relying solely on the second (enforceability) step.

---

[9]Recall that in the Sixth Circuit questions of "enforceability" concern "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong*, 589 F.2d at 828 (citation omitted).

This is the question that was raised by the Eleventh Circuit in *Wylie*, 706 F. App'x at 579-80, but left unanswered, as discussed in Section II.C, *supra*. Restated in those terms, Firexo contends that a forum-selection clause's *applicability* is distinct from and antecedent to its *enforceability*, so the district court had to begin with the ordinary *Erie* approach to contract interpretation, to determine the governing law and then determine applicability under that law. FGL contends that applicability is just a part of the federal law of enforceability, so the district court was correct to begin (and end) with the federal common law "closely related" doctrine.

## B. Circuit Split

There is a circuit split on this question and the Sixth Circuit has yet to formally join either side.**[10]** On FGL's side of the split, some Circuits apply federal common law to interpret the scope or applicability of forum-selection clauses. *See Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010) ("Following the majority rule, we thus conclude that a federal court interpreting a forum selection clause must apply federal law in doing so."); *Manetti-Farrow*, 858 F.2d at 513 ("Moreover, because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses."); *see also Fouad on behalf of Digital Soula Sys. v. State of Qatar*, 846 F. App'x 466, 469 (9th Cir. 2021) ("Federal law applies to interpreting a forum selection clause."). In sum, these cases see forum-selection clauses as a purely procedural issue of venue selection, so questions of scope or applicability fall under enforcement, to be decided by federal common law.

On the other side of the split, Firexo argues that the "growing trend" among the Circuit Courts is to apply the two-step approach. *See In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018); *Weber v. PACT XPP Techs.*, AG, 811 F.3d 758, 770 (5th Cir. 2016); *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014); *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 430 (10th Cir. 2006); *see also John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d

---

**[10]**There is a third "side" to this split, due to the Seventh Circuit's unique view: "Simplicity argues for determining the validity and meaning of a forum selection clause . . . by [sole] reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears, rather than making the court apply two different bodies of law in the same case." *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007).

1070, 1073 (3d Cir. 1997) (Alito, J., writing) ("The question of the scope of a forum selection clause is one of contract interpretation.").  The *Martinez* Court explained its rationale:

> There is no [] federal interest, however, in overriding [the] parties' contractually chosen body of law in favor of uniform federal rules governing the interpretation of forum selection clauses.  Indeed, such an exercise in federal-common-law-making undermines the constitutional allocation of judicial power between the state and federal systems established in *Erie*.

> Contract law—including the rules governing contract interpretation—is quintessentially substantive for *Erie* purposes, and therefore primarily the realm of the states.  In construing a forum selection clause, a court may confront a wide range of contract law issues, from the treatment of ambiguous phrases, to the admissibility of parol evidence, to successorship *and the rights of third-party beneficiaries*.  *Erie* warns against an approach that would force federal courts to generate a sprawling federal general common law of contracts to govern such questions whenever they arise in the context of forum selection clauses.

> The instant case concededly differs from one that poses a typical *Erie* question, both because it arises under federal question jurisdiction, and because the forum selection clause here provides for proceedings abroad under foreign law, rather than in a particular state's courts under state law.  Yet *Erie* does not merely articulate a choice-of-law rule for federal diversity cases.  Rather, the decision reflects a constitutional architecture in which the federal judiciary's common-law-making power is confined to restricted areas where a federal rule of decision is necessary to protect uniquely federal interests or where Congress has given the courts the power to develop substantive law.

> We find no authority for federal courts to generate general rules of contract interpretation where the contracting parties have expressly selected another body of law to govern their agreement and rely on this law in litigation.

*Martinez*, 740 F.3d at 221-22 (editorial marks, quotation marks, and citations omitted; paragraph breaks inserted; emphasis added).  The *McGraw-Hill* Court was a bit more direct:

> [T]he interpretation of a forum selection clause is an analytically distinct concept from the enforceability of that clause.  The question of the scope of a forum selection clause is one of contract interpretation.  Our case law directs us to use state law to determine the scope of a forum selection clause—that is, whether the claims and parties involved in the suit are subject to the clause.  State law, therefore, typically governs whether the clause covers a particular claim, *as well as whether the clause applies to a non-signatory as an intended beneficiary or closely related party*.

*McGraw-Hill*, 909 F.3d at 58 (quotation marks and citations omitted; emphasis added). In sum, these cases reject the creation of federal common law to interpret contract provisions.

FGL counters that these cases do not signify a "trend," and insists that the majority of courts interpret forum-selection clauses using federal common law, which furthers the Supreme Court's policy favoring forum-selection clauses. For support, FGL cites a list of cases in which federal courts applied the federal-common-law "closely related" doctrine without any mention of state (or contract designated) law. Firexo answers this the same way *Martinez* did, which said:

> This Court has likewise at times cited federal law in interpreting a forum selection clause, even where the contract at issue also contained a choice-of-law clause. There is no indication in any of these decisions, however, that the parties urged the application of any specific element of the contractually chosen body of law to govern the interpretation of the forum selection clause.
>
> These cases, then, simply stand for the proposition that litigating parties by their acquiescence may induce the trial court to assume that foreign law is similar to that of the forum, with the result that a court does not err when it articulates its decision by reference to the law of the forum.

*Martinez*, 740 F.3d at 223 (quotation marks and citations omitted; paragraph break inserted); *see also Wright v. Spaulding*, 939 F.3d 695, 707 (6th Cir. 2019) (Thapar, J., concurring) ("Sometimes it happens almost by accident. For instance, this court followed other circuits without once stopping to think whether it was taking a wrong turn. We started by assuming that the out-of-circuit cases *might* be right. Soon, we assumed they *were* right." (citations omitted)). Because FGL's cited opinions merely assumed that federal common law applied, without protest from the opposing party, they do not "hold" that federal common law *necessarily* applies. Of course, this same point applies to the courts' application of the "closely related" doctrine itself.

### C. Sixth Circuit Dicta—*Baker v. LeBoeuf*

*Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997), is a typical example. As discussed in Section II.C, *supra*, a non-signatory attempted to enforce a contract's forum-selection clause and the court rejected that attempt under each of six possible doctrines, including the "closely related" doctrine. The panel affirmed, and—by doing little more than referring to it in the opinion—proceeded as if the "closely related" doctrine were law in the Sixth Circuit. But *Baker* did not expressly "hold" that it was adopting the "closely related"

doctrine—*Baker* merely said, in its single-sentence analysis of this topic, that the district court had considered *Hugel*'s "closely related" test to conclude that the parties were not "closely related," and ultimately affirmed that conclusion along with the court's conclusions on the other five doctrines.

Of the principles that we use to distinguish holdings from dicta, two are relevant here. The first is that to be a "holding," the statement or conclusion "must contribute to the judgment," because "a conclusion that does nothing to determine the outcome is dictum and has no binding force." *Wright*, 939 F.3d at 701. Given that the *Baker* panel held that the non-signatory could not enforce the contract (on any conceivable basis), the invocation of the "closely related" doctrine did not determine the outcome. While the *Baker* opinion does not contain the hallmark language of dicta (e.g., "even if" or "assuming" or "accepting"), it easily could: i.e., *even if* the "closely related" doctrine applied in the Sixth Circuit, the parties were not closely related. It was not necessary for the panel to decide whether the "closely related" doctrine was valid, legitimate, or in any way justifiable.[11] And, as the *Baker* panel expressly disclaimed, it was unnecessary for it to "consider whether federal or state law applies to this issue, because federal and Ohio law treat forum selection clauses similarly." *Baker*, 105 F.3d at 1105 (citations omitted).

The other principle is that for a statement or conclusion to be a "holding," the court must have "considered the issue and consciously reached a conclusion about it," because "questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Wright*, 939 F.3d at 702 (quotation marks and citations omitted). In *Baker*, even looking to the underlying magistrate judge's Report, *Baker*, 1993 WL 662352 at *10, in conjunction with the panel opinion, *Baker*, 105 F.3d at 1106, there is no basis to suspect, much less conclude, that the panel consciously considered the issue of whether to formally adopt the "closely related" doctrine in the Sixth Circuit, or made a conscious conclusion. *See Wright*, 939 F.3d at 702; *cf. Freed v. Thomas*, 976

---

[11]Stated another way: If Baker had argued to the panel that the "closely related" doctrine was not the law of the Sixth Circuit—or not legitimate federal law at all—the panel could have, and most likely would have, declined to address that argument because it did not matter to the decision. The panel held that LeBoeuf could not enforce the contract via the "closely related" doctrine, whether or not the "closely related" doctrine was Sixth Circuit law.

F.3d 729, 740 (6th Cir. 2020) ("As such, it is not *clear* that the court *consciously* reached a conclusion . . . where subsequent readers must infer that the court reached such a conclusion without any substantive analysis." (editorial marks, quotation marks, citation, and footnote omitted)). Nor is this a scenario with a necessarily implicit conclusion, in which "the only way" the *Baker* panel could have held that the non-signatory could not enforce the forum-selection clause was by adopting the "closely related" doctrine in the Sixth Circuit. *See Freed*, 976 F.3d at 743 (Larsen, J., dissenting).

Despite appearances and cases that may suggest otherwise, *Baker* did not adopt the "closely related" doctrine in the Sixth Circuit. Any allusion to that idea in *Baker* is dicta.

### D. Courts Must First Decide Applicability Using *Erie* Principles

Recall that Firexo's position (i.e., its side of the circuit split) is that the applicability of a forum-selection clause is distinct from and antecedent to its enforceability, so courts must use the *Erie* approach to contract interpretation to determine the clause's applicability under that appropriate law. Even on its own, this is the stronger position, but also, related and relevant Sixth Circuit law points this way. For one thing, applicability and enforceability are separate questions under the Sixth Circuit's approach to analyzing forum-selection clauses for *forum non conveniens*. *See Lakeside Surfaces, Inc. v. Cambria Co.*, *LLC*, 16 F.4th 209, 215 (6th Cir. 2021) (explaining that "we first ask several contract-specific questions, including whether the forum-selection clause is applicable, mandatory, valid, and enforceable," and "[a]n answer of 'yes' to *all* those questions means" one thing, while "an answer of 'no' to *any* of them means" another (emphasis added)).

More importantly, Firexo's position tracks *AtriCure, Inc. v. Meng*, 12 F.4th 516, 520 (6th Cir. 2021), which addressed the applicability of arbitration clauses to non-signatories and held that there is no federal common law of contract interpretation for arbitration clauses; courts must use the *Erie* choice-of-law analysis—and the law dictated thereby—to determine whether an *arbitration* clause applies to a non-signatory. *Id.* at 525. Because arbitration clauses are "a particular type of forum selection clause," *Moses*, 929 F.2d at 1138, courts routinely apply "arbitration principles to forum selection more generally," *IAC/InterActiveCorp*, 44 F.4th at 640.

And as shown in the prior section, the "closely related" doctrine is a dubious doctrine at best—a judicial concoction without underlying authority or justification. It appeared *ipse dixit* and continues to exist primarily because no court has rejected it. There are, however, established (and vetted) doctrines for the enforcement of a contract by or against a non-signatory:

(1) incorporation by reference;

(2) assumption;

(3) agency;

(4) veil-piercing/alter ego;

(5) estoppel; and

(6) third-party beneficiary.

*Hellenic Investment Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006). One consequence of the "closely related" doctrine is to circumvent—and nullify—these doctrines.

Even recognizing that State courts may craft contract-interpretation common law as they see fit, those doctrines should be enough—if a party seeking to enforce a contract by or against a non-signatory cannot satisfy one of those doctrines, courts should adhere to the "ordinary rule" that a contract binds only its signatories. Either way, under federal common law (the FGL side of the circuit split), the "closely related" doctrine should not survive as a stand-alone doctrine.[12] *See Fitness Together Franchise, L.L.C. v. EM Fitness, L.L.C.*, 2020 WL 6119470, at \*4-5 (D. Colo. Oct. 16, 2020) ("'Closely related' appears to be an umbrella term that refers to a variety of common law doctrines [that] courts use to bind non-signatories to contracts, including third-party beneficiaries, successors-in-interest, principals of signatory agents, and alter egos.").

**E. Application**

Under the *Erie* approach to contract interpretation, a federal court sitting in diversity begins with a conflict-of-laws analysis using the law of the State in which it sits (here Ohio) to determine the governing law, and then interprets the contract provision under that law. *See*

---

[12]Contract interpretation is fundamentally a matter of state law. *See DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015). Therefore, nothing in this opinion would (or even could) foreclose a State from creating or adopting the "closely related" doctrine as the law in that State. In fact, as the concurring opinion explains, some States have done so. And if the two-step *Erie* approach were to lead us to the law of such a State, then—barring some overriding constitutional problem—we would apply that State's "closely related" doctrine like any other doctrine.

*Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. --, 142 S. Ct. 1502, 1509 (2022). Ohio follows the Restatement (Second) of Conflicts §§ 187-88 (1971) in contract cases, *Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206, 208-14 (Ohio 2001), and the Restatement accepts choice-of-law provisions in contracts, but for two exceptions that do not apply here. *See Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 715 (6th Cir. 2015). Consequently, in the ordinary course, Ohio's law of conflicts would accept the JVA's choice-of-law provision designating English law. Despite this ordinary application, the panel in *AtriCure*, 12 F.4th at 525, demurred: "It is not clear how Ohio courts would resolve this choice-of-law question . . . [because] some courts recognize that a contract's choice-of-law provision should not apply when the dispute involves nonparties who did not sign the contract . . . [and] [p]erhaps Ohio courts would find these decisions persuasive."

But, either way, the court would not apply federal common law. If the analysis led the court to reject the JVA's choice of English law, then Ohio's law would be "the applicable law in the absence of an effective choice of law by the parties," pursuant to Restatement (Second) of Conflicts § 188(2). *See Wise*, 780 F.3d at 717. The ultimate outcome is that the court would use either English law or Ohio law to interpret the JVA as a whole, and the forum-selection clause specifically, to determine whether it applies to Firexo as a non-signatory to the JVA.

Because neither Firexo nor FGL argues for Ohio law, however, "[t]he parties' litigation choices allow us to avoid this choice-of-law issue." *See AtriCure*, 12 F.4th at 525. We can accept English law as the law governing the interpretation of the JVA's forum-selection clause.

Firexo argues that English law generally forbids the enforcement of a contract (including a forum-selection clause) against a non-signatory. Firexo cites three English cases, but its most informative and pertinent citation is to a treatise on English Contract Law, which includes this:

5. Enforcement Against Third Parties

(a) General Rule: Third Party not Bound

The general rule is that a contract binds only the parties to it. This rule is regarded as an aspect of the doctrine of privity; and in so far as A and B cannot by a contract between them impose an obligation to perform duties arising under that contract on C, the rule may seem to be so obvious that it scarcely needs to be

stated: if a contract between A and B provided that C was to pay £100 to A, no-one would suppose that this contract could oblige C to make the payment. The point is further illustrated by a case in which the [U.K.] Supreme Court held that a contract entered into by a company did not bind a third party merely because that person was the company's controlling shareholder.

Chitty on Contracts (34th ed. 2021) at § 20-147 (footnotes omitted).

Taking this general rule (and its examples) at face value, the forum-selection clause here does not apply to Firexo. But, as FGL argues, English law is not peculiar on this premise; the general rule in American law also limits a contract to only the signatories, but for certain exceptions under which non-signatories are nonetheless parties to the contract. And English law likewise recognizes exceptions. *See* Chitty at § 20-149 (e.g., noting exceptions arising in agency, from covenants relating to land, or through liabilities imposed by legislation).

But, despite its insistence that Firexo "cites generalized concepts of English privity out of context to hide exceptions directly at play in this appeal," FGL does not identify a single exception (i.e., doctrine), much less demonstrate, or even argue, how any exception is "directly at play" here. *See* FGL's Appellee Br. at 22. If one of the English-law exceptions to this rule of privity applies to the present circumstances, FGL has failed to argue and prove its applicability here, thereby forfeiting any reliance on it. This leaves the general rule unrebutted and controlling.

Rather than identifying and arguing any specific rule or doctrine that would satisfy an exception to the English rule of privity, FGL relies on two general statements of English law quoted in *Martinez v. Bloomberg LP*, 740 F.3d 211 (2d Cir. 2014). The first is that, as relevant to the quoted cases, "the proper approach to the construction of clauses agreeing [to] jurisdiction is to construe them widely and generously," *id.* at 225 (quoting *UBS AG v. HSH Nordbank AG*, 2009 EWCA 585) (editorial marks omitted), and the second is that "any jurisdiction or arbitration clause in an international commercial contract should be liberally construed, and [] the words 'arising out of' should cover every dispute except a dispute as to whether there was ever a contract at all," *id.* at 224 (quoting *Fiona Trust & Holding Corp. v. Privalov*, 2007 EWCA 20) (editorial marks and quotation marks omitted). But the question in those cases was whether the *claims* fell within the language of the clause; there was no question about non-signatories.

All the parties in those three cases were signatories.**13**  Neither statement of English law (or any of the three associated cases) applies to the English rule of privity or concerns a non-signatory.

FGL's other argument is that several courts (citing two Eleventh Circuit cases, a Seventh Circuit case, and a district court case)**14** have applied the "closely related" doctrine to bind non-signatories to contracts that contained English choice-of-law provisions, so English law cannot be used to prevent the application of the "closely related" doctrine.  But each of those opinions applied the "closely related" doctrine without question or protest from the opposing party, or consideration or assessment of whether the English choice-of-law provision should instead direct the analysis, so they do not "hold" that the federal-common-law "closely related" doctrine necessarily trumps the *Erie* doctrine choice-of-law analysis.**15**  *See also Martinez*, 740 F.3d at 223.

Under the *Erie* approach, we apply the JVA's choice of English law to determine whether the JVA applies to non-signatory Firexo.**16**  Under English law, as the parties have presented it here, contracts do not apply to non-signatories.  Therefore, the JVA does not apply to Firexo and, correspondingly, the JVA's forum-selection clause does not apply to Firexo.

**IV.**

For the forgoing reasons, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

---

**13***See Martinez*, 740 F.3d at 214-15 (describing Martinez's employment agreement with Bloomberg); *UBS AG v HSH Nordbank AG*, 2009 WL 1657158 (Court of Appeal Civil Division, 18 June 2009) (case summary); *Fiona Trust & Holding Corp v Privalov*, 2007 WL 2944855 (House of Lords, 17 October 2007) (case summary).

**14**The cited cases are *Xena Invs., Ltd. v. Magnum Fund Mgmt. Ltd.*, 726 F.3d 1278, 1285 (11th Cir. 2013); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993); *Amto, LLC v. Bedford Asset Mgmt., LLC*, 168 F. Supp. 3d 556, 569 (S.D.N.Y. 2016).

**15**Obviously, the same holds true for *Baker v. LeBoeuf.  See* Section III.C, *supra*.

**16**One extraneous point warrants mention.  FGL is a signatory to the JVA, so it expressly consented to both the forum-selection and choice-of-law clauses, both designating England.  Firexo is not a signatory, so it did not expressly consent to any aspect of the JVA.  As it stands, FGL is fighting to enforce one JVA provision and avoid another: i.e., to enforce the JVA's forum-selection clause against non-signatory Firexo (against its consent), while at the same time fighting to prevent enforcement of the choice-of-law clause (England or Wales), despite its own express consent to that clause.  Thus, any consideration of equity or fairness would appear to weigh against FGL.

---

**CONCURRING IN PART AND IN THE JUDGMENT**

---

LARSEN, Circuit Judge, concurring in part and in the judgment. The central issue in this case is what law governs whether a non-signatory may invoke, or be bound by, a contract's forum-selection clause. I agree with Judge Batchelder that, when sitting in diversity, federal courts must use an *Erie*/*Klaxon* choice-of-law analysis and answer the non-signatory question by reference to the substantive law that analysis yields.

This conclusion follows from the Supreme Court's reasoning in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), our opinion in *AtriCure, Inc. v. Meng*, 12 F.4th 516 (6th Cir. 2021), and the federalism principles undergirding the *Erie* doctrine. *Arthur Andersen* and *AtriCure* addressed when a non-signatory may be bound by, or may invoke, an arbitration agreement. In *Arthur Andersen*, the Supreme Court held that questions "regarding the scope of agreements (including the question of who is bound by them)" are to be decided by "background principles of state contract law," because nothing in the Federal Arbitration Act purported to displace these state law principles. 556 U.S. at 630. In *AtriCure,* this court joined other circuits in "recogniz[ing] that [we] now must look to the relevant state's common law," rather than federal common law principles, "to decide when nonparties may enforce (or be bound by) an arbitration agreement." 12 F.4th at 524 (collecting cases). So if the question before us were whether a non-signatory was bound by an arbitration clause, rather than a forum-selection clause, we would answer that question in accordance with state-law principles. And, of course, in a diversity case, resort to state law is the normal rule for questions of contract interpretation, including "who is bound by" the contract. *See Arthur Andersen*, 556 U.S. at 630; *see generally Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Given this background, we must ask what reason we would have to treat forum-selection clauses differently. As a matter of first principles, I see none. After all, an arbitration agreement is just "a specialized kind of forum-selection clause." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022). So one would think that the same law would govern who falls within the "scope" of each type of agreement.

Does our precedent require a different answer? Not as I see it. I agree with Judge Batchelder that this court did not adopt the "closely related" doctrine in *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102 (6th Cir. 1997). As she explains, *Baker* is best read as assuming, without deciding, that the "closely related" doctrine applied in this circuit. 105 F.3d at 1106. And *Baker* expressly noted that it was not deciding "whether federal or state law applie[d]." *Id.* at 1105.

I respectfully disagree with the dissent's conclusion that *Wong v. PartyGaming Ltd.*, 589 F.3d 821 (6th Cir. 2009), decides this question. *Wong* held that federal law should govern "the enforceability of a forum selection clause" because it "implicates federal procedure." *See id.* at 827. But, although we might refer colloquially to the non-signatory question as one of "enforcement," *see AtriCure*, 12 F.4th at 523, the substance of the non-signatory problem (*who* may "enforce" against whom) does not map onto the "enforceability" questions that concerned *Wong* (*whether* the clause may be "enforced" at all). *See Wong,* 589 F.3d at 828 (asking "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust"). And the conclusion that federal law should control the non-signatory question in forum-selection clauses because it involves "procedure" is hard to square with *Arthur Andersen* and *AtriCure*, which held that state law controls the "who is bound" question for arbitration clauses, even though arbitration clauses also implicate procedure, *see Viking River Cruises*, 596 U.S. at 653, and the FAA specifically "creates substantive federal law regarding the *enforceability* of arbitration agreements," *Arthur Andersen,* 556 U.S. at 630 (emphasis added). In sum, I agree with Judge Batchelder, and the Second and Third Circuits, that "whether the claims and parties involved in the suit are subject to the forum selection clause" is a question of scope (or clause "applicability") distinct from the "enforceability" of the clause, and that the scope question should be determined using the ordinary *Erie/Klaxon* rules. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 217–18 (2d Cir. 2014); *see also In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) ("State law . . . typically governs whether the clause covers a particular claim, as well as whether the clause applies to a non-signatory as an intended beneficiary or closely related party.").

As for the disposition, I agree with Judge Batchelder's application of this rule in part IV.E.  Ordinarily, I might favor a remand to allow the district court to consider the English-law question in the first instance.  Nevertheless, on this record I agree that FGL did not adequately identify or argue that an exception to the general English rule of privity applies here.

That said, I do not join the lead opinion in full because I see no occasion here to endorse particular theories of contract law or to discredit the "closely related" test generally.  State courts may choose to hew closely to "'traditional principles' of state law allow[ing] a contract to be enforced by or against nonparties to the contract."  *Arthur Andersen,* 556 U.S. at 631 (listing, as examples, "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel" (citation omitted)).  But they are also free to adopt some version of the "closely related" test as a matter of state law.  Several states have arguably done so.  *See, e.g.*, *Ex parte Killian Constr. Co.*, 276 So. 3d 201, 209 (Ala. 2018); *Keehan Tennessee Inv., L.L.C. v. Praetorium Secured Fund I, L.P.*, 71 N.E.3d 325, 333 (Ohio Ct. App. 2016); *Solargenix Energy, LLC v. Acciona, S.A.*, 17 N.E.3d 171, 185 (Ill. App. Ct. 2014).  Where that is the case, district courts in this circuit sitting in diversity would have to apply that test as a matter of state law (if the forum state's choice-of-law rules so dictated).  Nothing in today's decision should be read to preclude such a possibility.  While Judge Batchelder's opinion identifies some concerns with the doctrine, they find no basis in the facts here.  Due process concerns, for example, are not at issue today because personal jurisdiction over FGL is not predicated upon the forum selection clause.

\*       \*       \*

The central question for our resolution is whether federal common law governs whether a non-signatory is bound by, or can invoke, a forum-selection clause in a contract.  *Cf. AtriCure,* 12 F.4th at 524.  Judge Batchelder's opinion correctly concludes that the answer is no; instead, the ordinary *Erie/Klaxon* rules apply.  I concur in this part of the analysis, in the lead opinion's application of the rule, and in the judgment.

---

**DISSENT**

---

GRIFFIN, Circuit Judge, dissenting.

I.

Defendant Firexo Group Limited (FGL), a British company, partnered with Ohio citizen Scot Smith to sell fire extinguishers in the United States via a joint venture agreement. That agreement both gave Smith control of one of FGL's subsidiaries, plaintiff Firexo, Inc., and designated Firexo as the entity through which Smith would oversee FGL's American operation. It also contained choice-of-law and forum-selection clauses, which provided that the laws and courts of England and Wales would govern "any dispute or claim arising out of or in connection with" the joint venture agreement.

Two items not included in the agreement led to litigation and the issue presented on appeal. First, the agreement did not include any specific details about how Firexo would sell FGL's fire extinguishers. Shortly after Smith and FGL signed the joint venture agreement, Firexo contends—which FGL disputes—it entered into an oral distribution agreement with FGL making Firexo the exclusive distributor of FGL's products in the United States. Firexo sold FGL's fire extinguishers, but issues with federal consumer safety regulations forced it to issue recalls and ultimately discontinue its sales efforts.

This litigation followed. Smith, an executive officer of Firexo and its majority shareholder, directed Firexo to file a complaint in Ohio state court that raised several claims based on FGL's failure to correct issues with its fire extinguishers and comply with their oral distribution agreement. FGL removed this case to federal court and moved to dismiss it, arguing that the joint venture agreement's forum-selection clause vested exclusive jurisdiction in the courts of England and Wales.

Secondly, FGL and Smith were signatories to the agreement; Firexo was not. Firexo opposed FGL's motion to dismiss on that basis. The district court enforced the forum-selection

clause nonetheless and dismissed the case for lack of jurisdiction, holding that under *Baker v. LeBoeuf, Lamb, Lieby & Macrae*, 105 F.3d 1102 (6th Cir. 1997), Firexo was "closely related" to the joint venture agreement thereby rendering the forum-selection clause enforceable against it. This timely appeal followed.

## II.

Although FGL moved to dismiss Firexo's complaint, the precise vehicle with which it sought to do so is unclear given the motion's imprecise language and the number of ways a case can be dismissed based on a forum-selection clause. *See Langley v. Prudential Mortg. Cap. Co., LLC*, 546 F.3d 365, 369 (6th Cir. 2008) (per curiam) (noting the option of either filing a motion to transfer venue under 28 U.S.C. § 1404(a) or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)); *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 371 n.2 (6th Cir. 1999) (mentioning Rule 12(b)(1), 12(b)(3) and 12(b)(6)).  For our purposes, what mechanism FGL used is immaterial, for "[w]e review the enforceability of a forum selection clause de novo." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 826 (6th Cir. 2009); *accord Sec. Watch, Inc.*, 176 F.3d at 371 n.2.

## III.

"A forum selection clause in an international agreement should control absent a strong showing that it should be set aside." *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995) (internal quotation marks omitted).  We enforce a forum-selection clause unless the opposing party can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* (citation omitted).  "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Wong*, 589 F.3d. at 828.  Firexo did not satisfy this burden.

## A.

When sitting in diversity, the *Erie* doctrine generally dictates we are to apply the substantive law of the state from which the action was removed (here, Ohio). *See, e.g.*, *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 452 (1943); *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S.

415, 427 (1996).  But we apply federal procedural law, and "forum selection clauses significantly implicate federal procedural issues." *Wong*, 589 F.3d at 827.  So, "in [a] diversity suit," as here, "the enforceability of the forum selection clause is governed by federal law" due to the "possibility of diverging state and federal law on an issue of great economic consequence, the risk of inconsistent decisions in diversity cases, and the strong federal interest in procedural matters in federal court." *Id.* at 827–28.  Indeed, as pointed out in *Wong*, six of our sister Circuits also consider the enforcement of forum-selection clauses a federal procedural issue governed by federal law.  *See Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 538 (8th Cir. 2009); *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (per curiam); *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007); *P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (per curiam); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995); *but see Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007); *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 428 (10th Cir. 2006).  And since *Wong*, the Fourth Circuit has also adopted this approach.  *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010).  Firexo seeks to avoid the application of federal law by arguing that we should use English law to determine whether the forum-selection clause applies in this case before considering enforceability.  Bifurcating the analysis, Firexo claims, is the proper approach.  And, according to Firexo, the forum-selection clause does not apply in this case because non-signatories cannot be bound by forum-selection clauses under English law.  Appellant Brief at 48–52.

But this "applicability" argument just relabels a classic "enforceability" question.  Courts routinely view "applicability" as addressing a forum-selection clause's text to determine its scope and how to interpret it.  *See, e.g.*, *Dynamic CRM Recruiting Sols., L.L.C. v. UMA Educ., Inc.*, 31 F.4th 914, 917–18 (5th Cir. 2022) (framing the "applicability" question as one of contract interpretation); *Collins ex rel. herself v. Mary Kay, Inc.*, 874 F.3d 176, 184–86 (3d Cir. 2017) (same).  Conversely, "enforceability" inquiries address whether a party should be bound by a forum-selection clause.  *See, e.g.*, *Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209, 215–20 (6th Cir. 2021) (discussing enforceability as relating to who is bound by a forum-selection clause without reference to the clause's text); *Wong*, 589 F.3d at 827–30 (same); *Shell*,

55 F.3d at 1229–32 (same); *see also, e.g.*, *AtriCure, Inc. v. Meng*, 12 F.4th 516, 524 (6th Cir. 2021) (discussing, separately from its text, the enforcement of an arbitration clause as a question of which parties would be bound by the clause); *Ginter*, 536 F.3d at 441–45 (reviewing the forum-selection clause's text when considering whether it applied, but not when considering whether it was enforceable); *Phillips*, 494 F.3d at 384–93 (same). In short, questions about "applicability" focus on the forum-selection clause's text to determine whether it applies to a given case. Enforcement, however, addresses whether the clause should bind the parties irrespective of the clause's text.

Firexo's "applicability" argument falls squarely on the "enforceability" side of that divide. It never grapples with the forum-selection clause's language or makes any argument that the clause does not apply to its claims. Instead, Firexo's argument is about whether it can litigate this case in federal court despite the clause's plain language only because it did not sign the joint venture agreement. That argument raises a classic enforceability question—i.e., whether the forum-selection clause is enforceable against a non-signatory—which, as set forth next, the federal closely-related-and-foreseeable test is specifically designed to answer.

B.

The parties do not dispute that our decision in *Baker*, the only published case in our circuit to address the closely-related-and-foreseeable test, governs today's dispute. 105 F.3d 1102. The plaintiffs in that dispute were American underwriters of Lloyd's of London and sued Lloyd's American attorneys concerning tax advice they received. 105 F.3d at 1102–04. When joining Lloyd's, the plaintiffs signed a contract with Lloyd's containing a forum-selection clause that stated English courts had exclusive jurisdiction over any claims arising from the business relationship. *Id.* at 1104. Although the defendants never signed that contract, they sought to invoke the forum-selection clause to dismiss the case. *Id.* The district court denied the defendants' motion to dismiss, and we affirmed. *Id.* at 1104–06.

*Baker* began its analysis by noting that "[o]ur first inquiry is whether the forum selection clause . . . even applies in this action." *Id.* at 1105. Moving to enforceability, we summarized the district court's reasoning before concluding that, "[a]fter reviewing the record and the law,

we find ourselves in agreement with the district court and hold that the defendants may not enforce the forum selection clause." *Id.* at 1106.

Notably, we highlighted that the district court in that matter relied on *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993), "which held that to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound" and that there was "no such connection in this action." *Baker*, 105 F.3d at 1106 (internal quotation marks omitted). While distinguishing related cases, we concluded that the defendants were "not as closely related to Lloyd's as [were] the Members' Agents, Managing Agents, and other . . . [parties] who would have little or no function outside the Lloyd's marketplace." *Id.* (internal quotation marks omitted; first alteration in original). Then, "[c]iting *Hugel*, . . . the [district] court held that the 'web of agreements' between the plaintiffs and Lloyd's demonstrates no close connection between [the defendants] and Lloyd's sufficient to require enforcing the forum selection clause in this action." *Id.* at 1106. *Hugel* explained that "[w]hile it may be true that third-party beneficiaries of a contract would, by definition, satisfy the 'closely related' and 'foreseeability' requirements, a third-party beneficiary status is not required." 999 F.2d at 209 n.7 (internal citations omitted).

We are bound by *Baker*'s adoption of the closely-related-and-foreseeable test. *Cf. United States v. Willis*, 257 F.3d 636, 643 (6th Cir. 2001) ("As the rules of this circuit require, a panel of this court is bound by the prior published opinions of this circuit unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.") (internal quotation marks omitted). True, *Baker* did not exhaustively discuss the closely-related-and-foreseeable test or explain its rationale to adopt the test. But it both expressly stated that it agreed with the district court's application of the test, and it addressed the district court's reliance on *Hugel* and the closely-related-and-foreseeable test: because there were insufficient contacts to satisfy that test, the forum-selection clause was not enforceable. No other test or reasoning supported our disposition, so the adoption of the closely-related-and-foreseeable test was hardly a "conclusion that does nothing to determine the outcome . . . and has no binding force." *Wright v. Spaulding*, 939 F.3d 695, 701 (6th Cir. 2019) (emphasis omitted).

Moreover, the focus on the closely-related-and-foreseeable test made it "clear" that we "intended to rest the judgment" on the test. *Id.* We considered the application of the test and consciously adopted it by referencing and agreeing with the district court's order and did so without discussing any other legal standard. Our lack of action on the latter further demonstrates that we must use the closely-related-and-foreseeable test moving forward. So our holding in *Baker* relied on the closely-related-and-foreseeable test; it was not a question lurking in the background. *See id.* at 702. Given this conclusion, our adoption of the closely-related-and-foreseeable test in *Baker* was not dicta and is binding on us.

Finally, the parties do not question whether *Baker* controls this case. In fact, Firexo repeatedly states in its principal brief that the closely-related-and-foreseeable test "is settled federal law." Appellant Brief at 4, 29. And because neither party argues that a different test applies, even if we were not bound by *Baker*, I would not consider sua sponte whether a different test should apply. Accordingly, I would apply the closely-related-and-foreseeable test and take this opportunity to define its parameters.

## C.

Following *Baker*, several federal circuit courts have expounded upon what it means to be closely related and foreseeable. The Fifth Circuit's decision in *Franlink Inc. v. BACE Servs, Inc.*, 50 F.4th 432 (5th Cir. 2022), is most persuasive. There, the court "fill[ed] in the blanks" surrounding the test:

> Borrowing from the precedents, including the Third and Seventh Circuits, we extract a few fundamental factors applicable here that we will consider in determining whether these non-signatories are closely related: (1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause particularly.

*Id.* at 441–42. This test is not "rigid"; rather, it requires "weighing the significance of the facts relevant to the particular case at hand." *Id.* at 442. And it can lead to nuanced results, as demonstrated in *Franlink* itself, which concluded that only one of three defendants was bound by the forum-selection clause. *Id.* at 442–43. When reaching that holding, the *Franlink* Court noted

that common ownership was a key factor favoring enforcing the forum-selection clause against the third defendant. *Id.* at 443.

I would adopt *Franlink*'s articulation of the closely-related-and-foreseeable test, which provides clear guidance for courts moving forward. It is also consistent with how we evaluated the relationships at issue in *Baker* to find that forum-selection clause unenforceable. Recall *Baker* essentially focused on the first two elements of the *Franlink* test—the defendants did not directly benefit from the contract that had the forum-selection clause and there was not a sufficient connection between the defendants and the agreement (i.e., no common ownership). *Baker*, 105 F.3d at 1106. Even though the *Baker* defendants clearly knew about the forum-selection clause because they sought to invoke it, they did not have a sufficient connection to the contract that created the forum-selection clause for the closely-related-and-foreseeable test to require enforcing the clause. *Id.*

Applying *Franlink*'s factors to this case is straightforward, as all four factors support enforcing the forum-selection clause here. First, common ownership: "Smith and [FGL] are the original and only investors" in Firexo. Smith was an executive officer of Firexo and its majority shareholder. Further, he controlled Firexo to the extent that he directed it to file this lawsuit. Second, direct benefits: the joint venture agreement expressly designated Firexo as the American seller and distributor of FGL's products. Third and fourth, knowledge and awareness: the two signatories jointly owned Firexo, and Smith sat on Firexo's board, so Firexo certainly knew about the forum-selection clause.

Firexo's arguments against enforcement do not grapple with the *Franlink* factors. Instead, Firexo repeats its argument that it would not be bound by the forum-selection clause under English law and argues that its claims bear no relation to the joint venture agreement. But English law plays no part in this analysis, and Firexo's claims plainly relate to the joint venture agreement because that very agreement designated Firexo as the American distributor for FGL's products. Indeed, as the district court noted, "[i]t is difficult to imagine a non-signatory that could be more closely related to a contract." Given this, Firexo is bound by the forum-selection clause, and the district court did not err by dismissing the complaint.

IV.

For these reasons, I respectfully dissent. I would affirm the district court, as our precedent requires.