RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0124p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

OAKLAND TACTICAL SUPPLY, LLC; JASON RAINES;
MATTHEW REMENAR; SCOTT FRESH; RONALD PENROD;
EDWARD GEORGE DIMITROFF,

                            *Plaintiffs-Appellants*,

       *v.*

HOWELL TOWNSHIP, MICHIGAN,

                            *Defendant-Appellee.*

> No. 23-1179

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:18-cv-13443—Bernard A. Friedman, District Judge.

Argued: November 9, 2023

Decided and Filed: May 31, 2024

Before: COLE, KETHLEDGE, and WHITE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Peter A. Patterson, COOPER & KIRK, PLLC, Washington, D.C., for Appellants. Christopher S. Patterson, FAHEY SCHULTZ BURZYCH RHODES PLC, Okemos, Michigan, for Appellee. **ON BRIEF:** Peter A. Patterson, COOPER & KIRK, PLLC, Washington, D.C., Joseph G.S. Greenlee, FPC ACTION FOUNDATION, Las Vegas, Nevada, Martha A. Dean, LAW OFFICES OF MARTHA A. DEAN, LLC, Avon, Connecticut, for Appellants. Christopher S. Patterson, David J. Szymanski, FAHEY SCHULTZ BURZYCH RHODES PLC, Okemos, Michigan, for Appellee. Thomas R. Schultz, ROSATI SCHULTZ JOPPICH & AMTSBUECHLER PC, Farmington Hills, Michigan for Amici Curiae.

      WHITE, J., delivered the opinion of the court in which COLE, J., concurred. COLE, J. (pp. 16–17), delivered a separate concurring opinion. KETHLEDGE, J. (pp. 18–23), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

HELENE N. WHITE, Circuit Judge.  Plaintiff-Appellant Oakland Tactical Supply, LLC (Oakland Tactical) leased a parcel of land in Howell Township, Michigan (the Township) with the intention of constructing and operating a commercial shooting range offering long-distance target practice.  It has been unable to do so, however, because the Township's zoning provisions limit the parcel to agricultural and residential uses.  Oakland Tactical and five Michigan residents who wish to train at its proposed range sued the Township, alleging that its zoning restrictions violate the Second Amendment.  The district court granted the Township's motion for judgment on the pleadings, concluding the zoning restrictions did not violate the Second Amendment.  While Plaintiffs' appeal was pending, the Supreme Court announced a new framework for deciding Second Amendment challenges in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).  We remanded for reconsideration in light of *Bruen*, and the district court again granted judgment for the Township.  We **AFFIRM**.

**I.**

**A.  Factual Background**

Oakland Tactical leased a 352-acre parcel of land in Howell Township "for the express purpose of operating one or more outdoor shooting ranges" offering "target shooting for self-defense and other lawful purposes, including but not limited to a long distance (e.g. 1,000 yard) range."  R.44 PID, 1085–86.  The individual Plaintiffs—Scott Fresh, Jason Raines, Matthew Remenar, Ronald Penrod, and Edward Dimitroff—are Michigan residents who wish to practice long-distance target shooting in Howell Township.[1]  The Township itself has no public shooting ranges and Plaintiffs allege that shooting ranges in nearby jurisdictions are either inadequate or

———————————

[1]Penrod and Dimitroff live in Howell Township. Raines lives in Oceola Township. Fresh lives in Livonia, and Remenar lives in Rochester Hills.  We note that Howell Township is close to Oceola Township but is some distance from Livonia and Rochester Hills.

inconvenient.**2**  And while there is public land that would accommodate the long-range shooting they wish to engage in, it is several hours away from the Township.  If Oakland Tactical were to construct a long-distance shooting range on its Howell Township parcel, the individual Plaintiffs would regularly engage in target shooting there.

Oakland Tactical has been unable to construct a range on the parcel, which is part of the "Agricultural-Residential District" (AR District), under the Howell Township Zoning Ordinance (Zoning Ordinance).  The version of the Zoning Ordinance in effect when Plaintiffs filed their action classified "rifle ranges" as "[o]pen air business uses."  R.61-2, PID 1349.  But the ordinance did not expressly permit "open air business uses" in any zoning district and largely limited commercial land uses in the AR District to agribusinesses and home businesses.  *Id.*, PID 1367–73.  Additionally, "recreation" facilities or buildings were permitted in three districts—the Regional Service Commercial District (RSC District) and the Heavy Commercial District (HC District) permitted indoor recreation facilities, and the Highway Service Commercial District (HSC District) permitted outdoor recreation facilities—but "recreation" was not defined.

Township zoning staff advised Michael Paige, Oakland Tactical's managing member, that zoning restrictions prevented Oakland Tactical from applying for a rifle-range permit because the AR District was not zoned for open-air business uses, and suggested that he request an amendment to the Zoning Ordinance.  Paige submitted an application for a zoning amendment on August 29, 2017, requesting that the Zoning Ordinance be changed to allow shooting ranges in the AR District.  A zoning analysis report prepared by the Township's planning consultant concluded that the requested amendment would affect all land in the Township zoned AR, amounting to "approximately 13,500 acres." R.46-4, PID 1141.  After a public hearing on the proposed amendment, the Howell Township Board of Trustees denied it on November 13, 2017.

---

**2**There are indoor ranges in the neighboring City of Howell but, according to Plaintiffs, they "are often unable to meet the public demand for range time" and "do not provide opportunities for rifle practice."  R.44, PID 1094.  The Michigan Department of Natural Resources operates a public range thirty minutes from the Township that offers rifle training; however, Plaintiffs assert "there are often long waiting lines to shoot," its fees ($40 per session) are considered high, and it offers rifle shooting only to a distance of 100 yards. *Id.*

### B.  Procedural History

Plaintiffs sued the Township roughly one year later, challenging the Zoning Ordinance under the Second Amendment.  In their operative complaint, Plaintiffs seek compensatory damages, a declaratory judgment that the Township's actions violate the Second Amendment, and an order permanently enjoining the Township from enforcing zoning ordinances "barring operation of shooting ranges open to the public" and "any law against the ordinary operation and use of shooting ranges open to the public."  R.44, PID 1104–05.  The Township filed a motion for judgment on the pleadings, and Plaintiffs filed a motion for summary judgment.  The district court granted the Township's motion, denied Plaintiffs' motion as moot, and entered judgment for the Township.  Plaintiffs filed a motion for reconsideration and a request to amend their complaint.  The court denied both, and Plaintiffs appealed.

After this court held argument in Plaintiffs' appeal, the Supreme Court issued its opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), establishing a new framework for evaluating Second Amendment claims.  Because this court was "unable to apply this standard based on the record and arguments" before us, we vacated the district court's order and remanded for the district court to reconsider Plaintiffs' challenge in light of *Bruen*.  *Oakland Tactical Supply, LLC v. Howell Twp.*, 2022 WL 3137711, at *2 (6th Cir. Aug. 5, 2022).  We instructed the district court to:

> decide, in the first instance, whether Oakland Tactical's proposed course of conduct is covered by the plain text of the Second Amendment.  If the district court concludes that Oakland Tactical's proposed course of conduct is covered by the plain text of the Second Amendment, it should then determine whether historical evidence—to be produced by the Township in the first instance— demonstrates that the Ordinance's shooting-range regulations are consistent with the nation's historical tradition of firearm regulation.

*Id.* (internal citations omitted) (citing *Bruen*, 597 U.S. at 31–33, 38).

After considering the parties' supplemental briefing addressing *Bruen*, the district court again granted the Township's motion.  The court first defined Plaintiffs' "proposed course of conduct . . . as construction and use of 'an outdoor, open-air, 1,000-[yard] shooting range.'" R.117, PID 2629–30.  In so doing, it rejected Plaintiffs' broader proposed formulation: "training

with firearms." *Id.*, PID 2629. It then concluded that this proposed course of conduct was not protected by the Second Amendment.

## C. Amendments to the Zoning Ordinance

After the district court entered its first opinion granting the Township's motion and while Plaintiffs' motion for reconsideration was pending, the Township amended its Zoning Ordinance. The amendments removed rifle ranges from the definition of "open air business uses," and explicitly defined "[i]ndoor recreation facilities" and "[o]utdoor recreation facilities" to include "sport shooting ranges." R. 97-2, PID 2236–37. The amendments also created a new "Industrial Flex Zone" in which indoor and outdoor recreation facilities are permitted "principal special uses with conditions." *Id.*, PID 2242–43. Those conditions regulate design and operation standards, safety, environmental management, hours of operation, size, setbacks, security, reclamation, and application requirements.

## II.

### A. Standard of Review

We review a district court's grant of judgment on the pleadings de novo under the same standard as for a motion to dismiss under Rule 12(b)(6). *Warrior Sports, Inc. v. NCAA*, 623 F.3d 281, 284 (6th Cir. 2010). Thus, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). "[D]ocuments attached to the pleadings become part of the pleadings and may be considered." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007). Legal conclusions and unwarranted factual inferences need not be accepted as true. *Winget*, 510 F.3d at 581–82.

### B. The Second Amendment

#### 1. *Heller* and *Bruen*

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

U.S. Const. amend. II.  In *District of Columbia v. Heller*, the Supreme Court held that this right is defined by the Amendment's operative clause—"the right of the people to keep and bear Arms."  554 U.S. 570, 577–78 (2008).  Based on the meaning of "keep" "bear" and "arms" as understood by "ordinary citizens in the founding generation," *id.* at 577, the Court defined the right as one to "have weapons" (keep arms) and "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person" (bear arms).  *Id.* at 582, 584.  In more succinct terms, it secures an individual right to "possess and carry weapons in case of confrontation."  *Id.* at 592; *see McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010) (incorporating this right against the states).

After *Heller*, courts of appeals developed a two-step "means-ends" test to determine whether firearms regulations violate the Second Amendment.  *See, e.g.*, *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012).  In *Bruen*, however, the Supreme Court held that two steps "is one step too many."  597 U.S. at 19.  Instead:

> [w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 49 n.10 (1961)).

### 2.  The Right to Train

Plaintiffs' challenge to the Zoning Ordinance centers on their ability to provide or engage in firearms training, conduct they argue the Second Amendment protects either textually or by "necessary implication."  Appellant Br. at 23.  We agree with the latter argument—that at least some training is protected, not as a matter of plain text, but because it is a necessary corollary to the right defined in *Heller*.  Four Justices seemingly endorsed this view before *Bruen*—Justice Thomas in a concurrence, and Justice Alito in a dissent joined by Justices Thomas and Gorsuch with which Justice Kavanaugh expressed general agreement.  *See N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1541 (2020) (Alito, J., dissenting) (The Second

Amendment right includes "necessary concomitant[s]" such as the right "to take a gun to a range in order to gain and maintain the skill necessary to use it responsibly."); *id.* at 1527 (Kavanaugh, J., concurring) ("I . . . agree with Justice [Alito's] general analysis of *Heller* and *McDonald*."); *Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring) ("Constitutional rights thus implicitly protect those closely related acts necessary to their exercise . . . . The right to keep and bear arms, for example, implies a corresponding right to obtain the bullets necessary to use them and to acquire and maintain proficiency in their use." (internal quotations and citations omitted)); *see also Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ("[T]he core right wouldn't mean much without the training and practice that make it effective.").

Additionally, recognizing that protecting firearms training is necessary to the effective exercise of Second Amendment rights fits with *Heller*'s holding that a law requiring firearms to be kept inoperable violates the Second Amendment. 554 U.S. at 630 ("This makes it impossible for citizens to use [firearms] for the core lawful purpose of self-defense and is hence unconstitutional."). Although prohibiting training does not make it wholly impossible to use firearms the way requiring inoperability does, it inhibits the ability to use them enough to fall within the principle laid out in *Heller*.

## C. Applicable Version of the Ordinance

The district court evaluated the Township's motion under the original ordinance because both sides "appear[ed] to agree" that the amendments "should not impact this case on remand[.]" R.117, PID 2628. On appeal, Plaintiffs argue the original ordinance is the relevant one "because the amendments at a minimum cannot extinguish [their] damages claims." Appellant Br. at 5–6. They further argue that the amendments have not changed the lay of the land because Oakland Tactical still cannot operate a shooting range on its parcel. And, Plaintiffs contend, the amended ordinance continues to impose "a de facto ban on outdoor ranges." Appellant Br. at 5. The Township argues that both versions of the ordinance have the same functional effect, maintaining that the original ordinance permitted shooting ranges, and the amended one does as well.

Plaintiffs are correct that the relevant version of the ordinance with respect to their damages claim is the un-amended ordinance in effect when Oakland Tactical first sought to build

a shooting range on the property. *See Midwest Media Prop., LLC v. Symmes Twp.*, 503 F.3d 456, 460–61 (6th Cir. 2005) ("The existence of [a] damages claim preserves the plaintiffs' backward-looking right to challenge the original law[.]"). However, the relevant ordinance for purposes of Plaintiffs' claims for declaratory and injunctive relief is the ordinance "as it now stands[.]" *Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412, 414 (1972) (per curiam); *see Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004) ("We can . . . [not] enjoin the enforcement of a provision that is no longer in effect.").

## III.

### A.  Plaintiffs' Facial Challenge to the Zoning Ordinance

Plaintiffs bring both a facial challenge to the Zoning Ordinance, based on the allegation that it constitutes an effective ban on shooting ranges within the Township, and an as-applied challenge. *See* R.44, PID 1103 ("Facially and as applied, Howell Township's laws effectively ban the operation of rifle ranges and other shooting ranges[.]"); *id.*, PID 1085 ("Howell Township has prohibited the siting, construction, and operation of shooting ranges in the town through its zoning regulations by failing to provide or allow any designated areas within the town wherein the siting, construction, or operation of a shooting range would be permissible."); *id.* ("Through its actions and inactions, Howell Township has infringed the rights of Oakland Tactical . . . to site, construct, and operate a shooting range within the borders of Howell Township . . . and the rights of the individual Plaintiffs to practice for lawful purposes with firearms.").

Because Plaintiffs assert a claim for damages only with respect to their as-applied challenge, their facial challenge must be considered with reference to the amended ordinance. The original ordinance's treatment of shooting ranges was ambiguous. The definition of "open air business uses" included rifle ranges, but the ordinance did not expressly permit open-air-business uses in any district. Several districts permitted recreational facilities or buildings. But although the Township took the position in this litigation that recreational uses included shooting ranges, the ordinance itself did not define the term.

If this ambiguity gave Plaintiffs a viable facial challenge, the amendments foreclosed it. The amended ordinance, on its face, permits shooting ranges in the RSC District, the HSC District, the Industrial District, and the Industrial Flex Zone. And Plaintiffs have not argued that other zoning restrictions make it functionally impossible to operate *any* shooting range under the ordinance, only that currently no parcels large enough for an outdoor range of the size it hopes to build are commercially available in the HSC District.[3]

Accordingly, we affirm the district court's dismissal of Plaintiffs' facial challenge.

## B. Plaintiffs' As-Applied Challenge

### 1. Proposed Course of Conduct

Turning to Plaintiffs' as-applied challenge, *Bruen* requires that we first define Plaintiffs' proposed course of conduct. Plaintiffs argue that their proposed conduct is "training with firearms that are in common use." Appellant Br. at 15–16. They contend that because they would participate in all activities offered at the proposed range, which would include target shooting at 50 and 100 yards in addition to long-distance shooting at up to 1,000 yards, the proposed conduct should be framed broadly to encompass everything the range would offer.[4] The Township argues the proposed conduct should be defined—as it was by the district court— more narrowly as the "use of an outdoor, open-air, 1,000-yard shooting range." R.117, PID 2629–30 (internal quotations and alterations omitted).

The difficulty in applying *Bruen* here is determining the line between the proposed conduct and the restrictive effect of the regulation. Is the proposed conduct training, certain types of training, or training in particular locations within the Township? This line was of less

---

[3]To the extent that Plaintiffs suggest that other zoning restrictions in the amended ordinance functionally prohibit shooting ranges within the Township, they forfeited this argument by failing to raise it in their opening brief. *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019).

[4]Plaintiffs clarified during argument that Oakland Tactical is not asserting any right of its own to construct a shooting range. Instead, it is asserting the rights of its potential customers to use its proposed range. *See Teixeira v. County of Alameda*, 873 F.3d 670, 673 (9th Cir. 2017) (holding gun retailer had standing to assert potential customers' Second Amendment rights); *Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011) (holding same for shooting range supplier). Therefore, we address only the district court's analysis of the individual Plaintiffs' proposed conduct.

significance under the balancing test commonly employed by the circuits before *Bruen*.  Under that approach, a broad view of the connection between the plaintiff's proposed conduct and the Second Amendment right could be balanced against an analysis of the rationale and effect of the regulation.  *See, e.g.*, *Drummond v. Robinson Twp.*, 9 F.4th 217, 231 (3d Cir. 2021) (applying intermediate scrutiny to a shooting-range zoning regulation and requiring the government to demonstrate "interest, fit," and the availability of "ample alternative channels").  Post-*Bruen*, however, the proposed conduct must be closely tethered to the plain text of the Second Amendment and defined with greater attention and precision because this is how *Bruen* approached the analysis and, if the conduct is protected, no weighing is permitted at *Bruen*'s second step.

Plaintiffs argue that because the Second Amendment protects the right to train and their proposed conduct necessarily involves training, *Bruen*'s first step is satisfied and the only remaining question is whether the zoning regulations are consistent with the "Nation's historical tradition of firearm regulation."  597 U.S. at 24.  This argument seems to draw the line based simply on whether the proposed conduct involves firearms, so that any law that regulates conduct connected to firearms must be tested against the historical tradition of regulation.  Consider a law regulating the storage of firearms.  Consistent with Plaintiffs' approach, one might argue that owning firearms in common use—a right within the Second Amendment's plain text—requires that they be stored in some fashion, so *Bruen* requires that any law regulating how firearms are stored, for example a law requiring that firearms be stored out of reach of young children, must be consistent with the historical regulation of firearms.  But *Bruen* does not say that any regulation that affects firearms must satisfy the historical-regulation test.  Rather, it first asks whether the proposed conduct affected by the challenged law is protected by "the Second Amendment's plain text."  *Id.*  The Second Amendment is not "a second-class right" and confers strong protections for covered conduct, *id.* at 70, but it is a right with a specific definition.  As carefully detailed in *Heller*, the right covered by the Second Amendment's plain text is the right to possess and carry arms in case of confrontation.

The *Bruen* Court's approach to defining the proposed course of conduct bears this out.  In *Bruen*, the challenged law required gun-license applicants who sought to carry firearms in public

to show "proper cause" for the issuance of an unrestricted license to carry a concealed handgun. 597 U.S. at 12–13. The *Bruen* plaintiffs wished to carry their handguns in public for self-defense and applied for unrestricted licenses, which were denied for failure to show proper cause. *Id.* at 15–16. Rather than defining the proposed conduct at the high level of generality urged by Plaintiffs—*i.e.*, "carrying handguns"—the Court's definition incorporated the purpose and location of the plaintiffs' desired action. The Court defined the "proposed course of conduct" as "carrying handguns publicly for self-defense," which it found to be covered by the plain text of the Second Amendment. *Id.* at 32. It then analyzed the historical validity of the proper-cause requirement under the second step.

Plaintiffs contend that because *Heller* and *Bruen* "demonstrate the capacious nature of the Second Amendment's plain text," they require broadly defining the proposed course of conduct. Appellant Br. at 17. Plaintiffs base this argument on *Heller*'s definition of "the people" to include "all Americans," 554 U.S. at 581, and *Bruen*'s holding that the Second Amendment imposes no "home/public distinction" on the right to keep and bear arms, 597 U.S. at 32. *Heller*'s conclusion that "the people" includes "all Americans" resulted from an examination of how other constitutional provisions use that term. 554 U.S. at 579–80. And *Bruen* concluded that "the definition of 'bear' naturally encompasses public carry" because it has been defined to mean carrying "weapons in case of confrontation" and confrontations necessarily occur outside the home. 597 U.S. at 32–33.[5] But these conclusions were the result of textual analysis, not—as Plaintiffs seem to suggest—the adoption of a default rule that a plaintiff's proposed conduct must be defined with maximal breadth. Instead, *Bruen*'s approach indicates that in defining a

---

[5]The dissent argues that this analysis demonstrates that the location of a plaintiff's proposed conduct is "irrelevant" to determining whether it falls within the scope of the Second Amendment right. Dis. Op. at 21. That conclusion is inconsistent with *Bruen*'s reasoning—the *Bruen* Court analyzed, as part of the first step, whether public carry fit within *Heller*'s definition of "bearing" arms. 597 U.S. at 32. And it concluded that the plaintiffs' claim should proceed to the second step not simply because the text does not expressly limit the Second Amendment right to bearing arms at home, but because the Court concluded the text provides positive protection for the right to bear arms in public. Finding the line between steps one and two of a *Bruen* analysis is not always a straightforward exercise. But the "circumstance of place," Dis. Op. at 21, is not per se irrelevant to step one. *See, e.g.*, *Antonyuk v. Chiumento*, 89 F.4th 271, 383 (2d Cir. 2023) (defining plaintiff's proposed conduct in a sensitive-places challenge as "carrying a firearm for self-defense *on private property open to the public*" (emphasis added)). And it is relevant here, where place is the element of conduct the ordinance restricts. *See* Dis. Op. at 22 (noting that the *Bruen* Court incorporated location into its definition of plaintiffs' proposed conduct "because public carry was precisely the conduct that New York restricted").

plaintiff's proposed conduct, courts should look to the intersection of what the law at issue proscribes and what the plaintiff seeks to do.

Given the Court's emphasis on grounding Second Amendment analysis in the Constitution's plain text, when applying *Bruen* we must ask not simply whether the regulation affects firearms in some way, but whether the regulation infringes the right to own and bear arms in case of confrontation. This is especially true in the context of implied corollary rights, where our analysis begins one step removed from the plain text. If the hypothetical storage regulation above does not restrict conduct necessary to effectuate that right, the proposed conduct—storage within reach of young children—is not protected by the plain text of the Second Amendment and the regulation need not satisfy *Bruen*'s second step, even though it regulates conduct connected to firearms.

Here, Plaintiffs' allegations and arguments make clear both that they wish to engage in conduct more specific than "firearms training" and that the Zoning Ordinance does not infringe their right to possess and carry arms in case of confrontation. First, as Plaintiffs stress, the Zoning Ordinance does not in fact ban all training—it permits "shooting on private property as an accessory use throughout the Township." Appellant Br. at 5. One of Plaintiffs' repeated objections is that the Zoning Ordinance places restrictions on commercial shooting ranges, while allowing "unorganized" non-commercial shooting on private property. *Id.* at 2 (emphasis omitted). It is uncontested that Oakland Tactical could invite the individual Plaintiffs to train on its property as guests. Thus, at a minimum, Plaintiffs' proposed conduct necessarily involves commercial training.

And, examining Plaintiffs' allegations and argument, their proposed conduct is narrower than commercial training alone. The core of Plaintiffs' challenge is that Oakland Tactical seeks to construct a commercial range within Howell Township offering target shooting at up to 1,000 yards. The individual Plaintiffs wish to engage in target shooting at a commercial range in Howell Township and some, but not all, specifically wish to engage in long-distance shooting. Plaintiffs allege that the Zoning Ordinance prevents them from engaging in their desired training in two ways: first, it prohibits any commercial facility on Oakland Tactical's leased parcel of land; and second, the zoning districts permitting commercial recreational facilities do not contain

sufficient "undeveloped land available . . . for a safe, long-distance rifle range." R.44, PID 1097.[6]

Plaintiffs have therefore offered two proposed courses of conduct: (1) engaging in commercial firearms training in a particular part of the Township; and (2) engaging in long-distance firearms training within the Township.

### 1. Covered by the Plain Text of the Second Amendment

Having defined Plaintiffs' proposed course of conduct, we must next determine whether it is covered by "the Second Amendment's plain text." *Bruen*, 597 U.S. at 24. Although Plaintiffs are correct that the Second Amendment protects the right to engage in commercial[7] firearms training as necessary to protect the right to effectively bear arms in case of confrontation, they make no convincing argument that the right extends to training in a particular location or at the extremely long distances Oakland Tactical seeks to provide.

Nor have they established that the Zoning Ordinance infringes the rights the Second Amendment protects. The Township's Zoning Ordinance does not interfere with the Second Amendment right to keep and bear arms in case of confrontation. *See Heller*, 554 U.S. at 592. And unlike in *Bruen*, where the plaintiffs' proposed conduct was the public carrying of firearms for self-defense—conduct squarely covered by the plain text of the Second Amendment—the challenged regulation here does not limit the ability to own, possess, or carry firearms. Nor does it affect the ability to train with firearms on private property. Further, the ordinance permits shooting ranges—commercial training—within the Township. Plaintiffs seek to vindicate a right not only to train at a commercial facility, but to train at a commercial facility anywhere in the Township. They argue that this right must be protected by the Second Amendment because, although indoor and outdoor ranges are permitted by the Zoning Ordinance, Oakland Tactical

---

[6]These allegations from Plaintiffs' Second Amended Complaint concern only the original pre-amendment ordinance. Plaintiffs acknowledged in supplemental briefing during their first appeal that the amended ordinance makes more land expressly available for shooting ranges.

[7]We agree with Plaintiffs that constitutional protection for firearms training cannot be limited to non-commercial training. Otherwise, only those who own or have access to private land suitable for training would be entitled to exercise their Second Amendment rights effectively.

has not found a suitable parcel outside the AR District, and the individual Plaintiffs find the existing, nearby options too inconvenient, expensive, or crowded.

These facts do not demonstrate that the Township's ordinance infringes a right necessarily implied by the Second Amendment—to train with firearms for proficiency in case of confrontation. This is not a case where the Township seeks to achieve through its zoning ordinances what it cannot do directly—ban all shooting ranges. *See Gazzola v. Hochul*, 88 F.4th 186, 196 (2d Cir. 2023) (citing *Cummings v. Missouri*, 71 U.S. 277, 325 (1866)). The amended ordinance makes clear that indoor and outdoor ranges are permitted uses in several districts. And Plaintiffs have not alleged that the Township, despite the original ordinance's ambiguity, would have prohibited Oakland Tactical from building a range in the districts allowing recreational facilities—according to the Amended Complaint, the planning commission officials who ultimately denied Oakland Tactical's request to allow shooting ranges in the AR District believed ranges to be "permitted in other districts." R.44, PID 1099. Although no ranges currently operate in the Township, Plaintiffs have not demonstrated that this is due to the Zoning Ordinance, which does not prohibit them. Because the Zoning Ordinance permits commercial training at indoor and outdoor ranges, it does not infringe Plaintiffs' right to train to achieve proficiency in case of confrontation, and they have not shown that the ability to train commercially anywhere within the Township is necessary to effectuate their Second Amendment rights. Plaintiffs' proposed course of conduct—commercial training in a particular location—is therefore not protected by the plain text of the Second Amendment.[8]

Turning next to long-distance commercial training, Plaintiffs have not established that this formulation of their proposed conduct is protected by the Second Amendment either. Accepting Plaintiffs' contention that the Zoning Ordinance effectively bans the commercial operation of a 1,000-yard range,[9] we ask whether the ability to train at such distances is

---

[8]Because Plaintiffs argue the zoning amendments should not substantively change our analysis, the failure of this argument forecloses Plaintiffs' claims for both damages and injunctive relief.

[9]Plaintiffs have not alleged or argued that the Zoning Ordinance does not make adequate land available for a 1,000-yard range, but rather that "only a few acres of undeveloped land [were] available" when they instituted this lawsuit. R.44, PID 1097. It is questionable whether the fact that of the land the ordinance makes available, only some was or is *commercially* available amounts to a constitutional violation. *See Bruen*, 597 U.S. at 24–25 (explaining that the Court's "Second Amendment standard" in *Bruen* aligns with its approach to "freedom of speech

necessary to effectuate Plaintiffs' Second Amendment right to keep and bear arms "in case of confrontation." *Heller*, 554 U.S. at 592. Plaintiffs have not offered any persuasive argument that it is.

It is difficult to imagine a situation where accurately firing from 1,000 yards would be necessary to defend oneself; nor have Plaintiffs identified one. To the extent that historical evidence is probative of the scope of a right derived by necessary implication, like the right to train, the historical evidence Plaintiffs present—a handful of examples of rifleman making shots from 600 to 900 yards during the Revolutionary War—is not convincing. Assuming these examples show that the Founding-era public understood *military* proficiency to include accuracy at these long distances, they do not establish that the Second Amendment right—which is unconnected to "participation in a structured military organization," *Heller*, 554 U.S. at 584— was similarly understood. And beyond this historical evidence, Plaintiffs make no real argument that long-distance training is necessary for the effective exercise of the right to keep and bear arms for self-defense, other than briefly noting that the federally chartered Civilian Marksmanship Program offers 1,000-yard training. We cannot conclude, based on these arguments, that the plain text of the Second Amendment covers the second formulation of Plaintiffs' proposed course of conduct—the right to commercially available sites to train to achieve proficiency in long-range shooting at distances up to 1,000 yards.[10] Accordingly, the district court did not err in granting the Township's motion.

## IV.

For the reasons set out above, we **AFFIRM**.

---

in the First Amendment, to which *Heller* repeatedly compared the right to keep and bear arms"); c*f. City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 53 (1986) ("That respondents must fend for themselves in the real estate market, on an equal footing with other prospective purchasers and lessees, does not give rise to a First Amendment violation.").

[10]The dissent seems to concede that the question whether extremely long-distance training is protected by the Second Amendment can be resolved at *Bruen*'s first step, but argues that a similar analysis of training at a particular place cannot be performed without drawing "hopelessly arbitrary" distinctions. Dis. Op at 22. But even if the latter analysis is less straightforward than the former, it is not arbitrary. Like the analysis of long-distance training, our analysis of training in a particular place is rooted in the self-defense purpose of the Second Amendment right. The considerations that go into that analysis are, in turn, shaped by the plausibility of plaintiffs' allegations and the arguments made by the parties. *See id.* at 21 (concluding that "plaintiffs have not explained why training at [1,000 yards] is necessary" for self-defense).

———————————

**CONCURRENCE**

———————————

COLE, Circuit Judge, concurring.   I join the lead opinion in concluding that the Plaintiffs' proposed course of conduct—"(1) engaging in commercial firearms training in a particular part of the Township; and (2) engaging in long-distance firearms training within the Township"—is not protected conduct under the plain text of the Second Amendment.  Op. at 13.  Under *Bruen*, our analysis stops there.

Plaintiffs argue that the text of the Second Amendment protects their right to engage in firearms training as a necessary incident to the core right protected by the amendment.  Appellant Br. 23.  In its exposition generally addressing the Second Amendment, the lead opinion states that "at least some training is protected, not as a matter of plain text, but because it is a necessary corollary to the right defined in *Heller*."  Op. at 6 (citing *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)).  The opinion's analysis later clarifies, however, that the conduct at issue here is not covered by the Second Amendment's plain text, which is a necessary first step under *Bruen*.  Op. at 13−15; *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).  In other words, "[p]laintiffs' proposed course of conduct—commercial training in a particular location" or "long-distance commercial training" is not protected by the plain text of the Second Amendment.  Op. at 14.

As such, we need not expound on whether corollary rights exist as necessary implication to the Second Amendment.  First, and as the lead opinion details, the general right to engage in firearms training is not the course of conduct at issue here.  The Township Ordinance does not ban all training with firearms because it allows individuals to train on private property.  Appellant Br. 5.  Because the facts before us necessarily limit the conduct that we must consider, we need not decide whether the right to engage in commercial firearms training is necessary to protect the right to effectively bear arms in case of confrontation—a constitutional issue of first impression for this court.  *See Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 326 (6th Cir. 2024) (stating "for a statement or conclusion to be a holding, the court must have considered the issue

and consciously reached a conclusion about it") (internal quotations omitted); *see also Nemir v. Mitsubishi Motors Corp.,* 381 F.3d 540, 559 (6th Cir. 2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (citation omitted).

Second, whether the Second Amendment protects the right to train by necessary implication is a largely unaddressed area of the law. As my colleagues detail, the Supreme Court has only addressed corollary rights to "possess and carry weapons in case of confrontation," *see Heller*, 554 U.S. at 592, in a citation to post-Civil War commentators and in its concurrences and dissent. *See Heller*, 554 U.S. at 617–19; *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1541 (2020) (Alito, J., dissenting); *id.* at 1527 (Kavanaugh, J., concurring); *and Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring). Additionally, only the Seventh Circuit has held that the right to bear arms "implies a corresponding right to acquire and maintain proficiency in their use[.]" *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). Because it is unnecessary for us to take a position on corollary rights to the Second Amendment, we would be best served by waiting to see how the law develops and if the Supreme Court addresses the issue directly.

We need not conclude that the right to train with firearms is a necessarily protected right under the Second Amendment. For these reasons, I respectfully concur.

———————————

**DISSENT**

———————————

KETHLEDGE, Circuit Judge, dissenting.  This is a hard case in which the majority has addressed the merits both thoughtfully and evenhandedly.  But I see those merits differently, based on the Second Amendment's text as interpreted by the Supreme Court—and so I respectfully dissent.

The Supreme Court has held that, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S 1, 24 (2022).  The Second Amendment in turn provides, in relevant part, that "the right of the people to keep and bear arms, shall not be infringed."  U.S. Const., amend. II.  That text, the Supreme Court has said, "'guarantee[s] the individual right to possess and carry weapons in case of confrontation.'"  *Bruen*, 597 U.S. at 32 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)).

This case involves target shooting, so a threshold question is whether firearms training is to any extent "cover[ed]" by the Second Amendment's "plain text[.]"  *Bruen*, 597 U.S. at 24.  To date, nearly every relevant authority (save the district court's opinion here) has said that training can fall within that coverage.  As Justice Thomas has explained, enumerated rights implicitly protect "closely related acts necessary to their exercise."  *Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring in the judgment).  The key word there is "necessary":  rights implied from the Constitution's text are legitimate only to the extent they are actually necessary to the exercise of an enumerated right.  Beyond that lie penumbras and emanations.  The First Amendment guarantee of a free press, for example, implies a right to buy the inks and paper necessary for printing newspapers.  *See Minneapolis Star and Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 582-83 (1983).  Similarly, the First Amendment "right to speak would be largely ineffective if it did not include the right to engage in financial transactions that are the incidents of its exercise."  *McConnell v. Federal Election Com'n*, 540 U.S. 93, 252 (2003) (Scalia, J., concurring in part).  And the Second Amendment right to keep and bear arms

"'implies a corresponding right to obtain the bullets necessary to use them[.]'" *Luis*, 578 U.S. at 26 (Thomas, J., concurring in the judgment) (quoting *Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014)).

More to the point here—in *Heller* itself—the Court cited as authority Thomas Cooley's observation that, "'to bear arms implies something more than the mere keeping; it implies the learning to handle and use them in a way that makes those who keep them ready for their efficient use[.]'" 554 U.S. at 617-18 (quoting T. Cooley, *General Principles of Constitutional Law* 271 (1880)). Accordingly, the Seventh Circuit has held that the right to bear arms "implies a corresponding right to acquire and maintain proficiency in their use[.]" *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). Four justices have expressly agreed with that proposition (in a Second Amendment case dismissed on mootness grounds). *See New York State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525, 1540-44 (2020) (Alito, J. dissenting). Meanwhile, the Third Circuit has observed that the word "infringe"—as used in the Second Amendment and as generally understood by the founding generation—referred not only to the elimination of a right but also to restrictions that "hinder" its exercise. *Frein v. Penn. State Police*, 47 F.4th 247, 254 (3d Cir. 2022). Training with firearms is obviously necessary to using them effectively; restrictions on training can therefore hinder the right to bear arms; and so a right to training with firearms might well be expressly (and not just impliedly) covered by the Second Amendment's text. Either way, as a matter of precedent and common sense, the Second Amendment's text covers a right to train with firearms.

Yet that right is subject to the limits of the Second Amendment itself. The Supreme Court has spelled out those limits for purposes of our analysis here. Specifically, as the Court has described it, the Second Amendment guarantees an "individual right to possess and carry weapons in case of confrontation." *Bruen*, 597 U.S. at 32 (quoting *Heller*, 554 U.S. at 592). And the Second Amendment itself says that right belongs to "the people[,]" which comprises (for the most part, at least) "ordinary, law-abiding, adult citizens[.]" *Id*. at 31-32. The Court has also "explained" that the Second Amendment protects only weapons "'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *Id*. at 47 (quoting *Heller*, 554 U.S. at 627). Thus—as described by the Court—the Second Amendment guarantees (1) to

law-abiding citizens (2) a right to keep and bear arms (3) in common usage (4) for purposes of "confrontation" (or "self-defense"). *Id*. at 32-33.

None of those limitations are arbitrary; to the contrary, all of them are "textual elements of the Second Amendment's operative clause[.]" *Id*. at 32 (internal quotation marks omitted). The question, then, is whether the plaintiffs' proposed conduct falls within them. Here, as in *Bruen*, nobody disputes that the individual plaintiffs are law-abiding citizens, *see id*. at 31-32; and the right to "bear" arms, as explained above, includes a right to train with them. Thus, to the extent the plaintiffs have alleged that they wish to train with arms "in common usage" for purposes (at least in part) of confrontation or self-defense, their conduct is presumptively protected under the Second Amendment. *Id*. at 24.

Most if not all of the individual plaintiffs have made allegations to that effect. As an initial matter, all of them seek to train with weapons in common usage—namely pistols, shotguns, rifles, or some combination thereof. And all of them expressly allege that they wish to train with those weapons for purposes (at least in part) of "target shooting at shorter distances[,]" Second Amended Complaint ¶8, or "for self-defense[.]" *Id*. ¶¶8, 9, 10, 11, 15. To that extent, therefore, each of the individual plaintiffs' proposed conduct is presumptively protected by the Second Amendment. The same is true for Oakland Tactical, since a party "generally" may assert "third-party rights [meaning here the rights of the individual plaintiffs] in cases where enforcement of the challenged restriction against the litigant [here, Oakland Tactical] would result indirectly in the violation of third parties' rights." *June Medical Servs., LLC v. Russo*, 591 U.S. 299, 318 (2020) (cleaned up); *see also Gazzola v. Hochul*, 88 F.4th 186, 194-95 (2d Cir. 2023) (holding that gun vendors can assert the Second Amendment rights of their customers and collecting cases from three other circuits holding the same).

The majority concludes that the proposed conduct is not presumptively protected because, in part, it collapses into one step an analysis the Supreme Court has told us to divide into two. Specifically, the majority says that, "[a]lthough Plaintiffs are correct that the Second Amendment protects the right to engage in commercial firearms training as necessary to protect the right to effectively bear arms in case of confrontation, they make no convincing argument

that the right extends to training in a particular location [namely Oakland Tactical's 352-acre parcel] or at the extremely long distances Oakland Tactical seeks to provide." Op. at 13.

I have no quarrel with the majority's point about "extremely long distances[.]" That circumstance bears directly on one of the limitations that the Supreme Court has recited as to the Second Amendment's scope—namely that the arms be kept or borne "in case of confrontation" or self-defense. *Bruen*, 597 U.S. at 32. Confrontations typically do not begin at distances of 1,000 yards (*i.e.*, more than a half-mile), which means that training at that distance is not self-evidently necessary for purposes of confrontation or self defense. And I agree that the plaintiffs have not explained why training at that distance is necessary for those purposes.

But I disagree that the plaintiffs' claims fall outside the coverage of the Second Amendment's text on the ground that the plaintiffs seek to train "at a particular location[.]" That circumstance—the circumstance of place—is irrelevant to the question whether "the Second Amendment's plain text covers an individual's conduct[.]" *Id*. at 24. By way of background (and to reiterate somewhat), whether the Amendment's text covers an individual's conduct is the first step of the analysis prescribed by the Supreme Court in *Bruen*. If that text does cover the individual's conduct, "the Constitution presumptively protects that conduct." *Id*. Then—at the second step of the analysis prescribed in *Bruen*—the government must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*.

The circumstance of place is relevant to the second step of that analysis, not the first. As discussed above, "the 'textual elements' of the Second Amendment's operative clause[,]" *id*. at 32, yield four limitations on the Amendment's textual scope. Place is not among them. To the contrary, whether a restriction on the places in which citizens may exercise their Second Amendment rights is lawful depends on whether the restriction "is consistent with the Nation's historical tradition of firearm regulation" under step two. *Id*. at 24. That is why—by way of an "example" of the analysis required under step two—the Court devoted two full pages to a discussion of the legality of "'laws forbidding the carrying of firearms in sensitive *places* such as schools and government buildings.'" *Id*. at 30-31 (quoting *Heller*, 554 U.S. at 626) (emphasis added).

Yet the majority concludes that the "location of the plaintiffs' desired action," Op. at 11, is relevant at step one—because, the majority points out, in *Bruen* the Court "defined the 'proposed course of conduct' as 'carrying handguns publicly for self-defense[.]'" *Id.* (quoting *Bruen*, 597 U.S. at 32). True, in *Bruen* the Court described the plaintiffs' conduct that way; but that was because public carry was precisely the conduct that New York restricted (indeed largely proscribed) there. *See Bruen*, 597 U.S. at 11-13. And the Court's reasoning in finding that conduct presumptively protected—that "[n]othing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms[,]" *id.* at 32— demonstrated the *irrelevance* of place to the question whether the plaintiffs' conduct was covered by that text. *Bruen* refutes the majority's analysis rather than supports it.

Moreover, as this case illustrates, importing the circumstance of place into the analysis at step one would render that analysis hopelessly arbitrary. The Second Amendment's text makes no distinctions as to place, which means (at step one) judges unavoidably would need to make them up. In this case, for example—for the plaintiffs' proposed conduct to be necessary to exercise their right to bear arms—must each plaintiff reside within a certain distance of Oakland Tactical's proposed range? If so, on what basis would we determine what that distance might be (perhaps by drive-time on Apple Maps)? Or would we instead consider the distance between the proposed range and existing ones? And could the plaintiffs bring a motion under Civil Rule 60(b) if a range in a nearby township later closed? Or should our analysis be confined within Howell Township alone? Relatedly, should the relevant "location" be Oakland Tactical's 352-acre parcel, as the majority says, or the Township as a whole?

These questions are unanswerable at step one precisely because our lodestar for that step—the Second Amendment's text—has nothing to say about them. But about the validity of restrictions upon the places in which citizens may exercise their Second Amendment rights—as *Bruen* took pains to illustrate—the Nation's traditions of firearm regulation might well have plenty to say. And traditions have often taken the form of law—specifically, common law— when judges have had occasion to describe them in words. The Nation's traditions can thus provide a source of law in step two that is absent in step one. Perhaps those traditions would

support the Township's actions here, or perhaps not; but *Bruen* requires that we put the Township to its proofs on that issue before rejecting the plaintiffs' claims.

In summary, then, I would reverse the district court's dismissal of the individual plaintiffs' claims and vacate the dismissal of Oakland Tactical's claims (because the question whether it can assert third-party claims has not yet been litigated). I think that Oakland Tactical's facial challenge to the Township's amended ordinance is likely meritless, for the reasons the majority states; but I would vacate the dismissal of that claim as well, so that it can be properly analyzed under *Bruen*. I would also allow the parties to litigate on remand two issues they have not fully addressed here: first, whether training for purposes of confrontation or self-defense is limited to target shooting at certain distances (which, as discussed above, the plaintiffs have not adequately briefed); and second, whether the Township's restrictions on the plaintiffs' proposed conduct is consistent with the Nation's historical traditions of firearm regulation (which the Township thus far has not briefed at all).

For these reasons, I respectfully dissent.